# IN THE OREGON TAX COURT

## STAN WILEY, INC.
*v.*
## DEPARTMENT OF REVENUE
## TRI-COUNTY METROPOLITAN TRANSIT DISTRICT
(TC 1949)

## REALTY GROUP, INC.
*v.*
## DEPARTMENT OF REVENUE
## TRI-COUNTY METROPOLITAN TRANSIT DISTRICT
(TC 1950)

Gile R. Downes, Holmes, DeFrancq & Schulte, P.C., Portland, represented plaintiffs.

Elizabeth S. Stockdale and James C. Wallace, Assistant Attorneys General, Department of Justice, Salem, represented defendant.

Gersham Goldstein, Stoel, Rives, Boley, Fraser and Wyse, Portland, represented intervenor.

Order entered March 5, 1984, denying plaintiffs' Motion

for Summary Judgment and granting defendant and intervenor's Motions for Summary Judgment.

### SAMUEL B. STEWART, Judge.

On March 21, 1983, each of the plaintiffs listed above filed complaints against defendant, alleging that, notwithstanding they had not retained the right to control the work of any salesperson and direct the manner in which it was to be done, they had paid the intervenor Tri-County Metropolitan Transit District's (Tri-Met) excise tax for each quarter during 1978, 1979 and 1980; that on April 30, 1981, plaintiffs filed claims for refund of those taxes for those years and that defendant had denied said claims. Defendant's answers alleged that plaintiffs had retained the right to control and were, accordingly, subject to Tri-Met's excise tax on employers. On April 20, 1983, Tri-Met filed a motion to intervene, which the court granted. Thereafter, intervenor moved to consolidate the 14 companies listed as plaintiffs, which the court likewise granted.

Plaintiffs, seeking a prompt, favorable resolution of the matter, moved to strike critical portions of defendant's and intervenor's answers as being sham, frivolous, redundant and conclusions of law, but the court denied plaintiffs' motions. At a pretrial conference on June 2, 1983, a procedure was agreed upon which would lead to the parties' filing briefs on the two basic issues involved, i.e., (a) was defendant's administrative rule, OAR 150-316.167(1) valid, and (b) whether plaintiffs' salespersons were independent contractors or employes. However, one plaintiff, The Realty Group, Inc., filed, on January 13, 1984, a motion for summary judgment. On February 3, 1984, defendant and intervenor filed a motion for summary judgment or continuance with respect to The Realty Group, Inc., followed on February 14, 1984, by defendant and intervenor filing a motion for summary judgment with respect to Stan Wiley, Inc.

Pursuant to ORS 267.385, Tri-Met adopted an ordinance imposing an excise tax on every employer equal to a percentage of the wages paid with respect to the employment of individuals. ORS 267.380(1)(a) defines "employer" as:

"(A)   A person who is in such relation to another person

that the person may control the work of that other person and direct the manner in which it is to be done; * * *."

Thereafter, pursuant to ORS 305.620(1), the defendant entered into an agreement with Tri-Met "for the collection, enforcement, administration and distribution of local taxes imposed upon or measured by * * * wages." ORS 305.620(3) provides that: "The department * * * shall prescribe the rules by which the taxes described by subsection (1) of this section are administered, collected, enforced and distributed."

The defendant did not do so. Rather, it relied upon an existing rule relating to withholding of personal income tax, *i.e.,* OAR 150-316.167.

Notwithstanding the finding in *Swenson v. Dept. of Rev.,* 6 OTR 234 (1975), that an administrative agency is not required to adopt rules and regulations for all facets of its responsibilities, defendant was mandated to do so in interpreting Tri-Met's tax. ORS 305.620(3) uses the mandatory word "shall" as distinguished from the discretion provided by ORS 305.100, for example, wherein defendant is only required to "[m]ake such rules and regulations it deems proper."

Defendant would have been better advised to have complied with the legislative mandate and prescribed specific rules for the administration, collection, enforcement and distribution of Tri-Met's tax on employers. If it intends to continue to administer Tri-Met's tax in this regard, it should do so at its earliest opportunity. In 1969, Oregon radically revised its personal income tax law to make it "identical in effect to the provisions of the federal Internal Revenue Code of 1954." ORS 316.007. To implement that policy, the defendant was instructed to "apply and follow the administrative and judicial interpretations of the federal income tax law." ORS 316.032. There have been periods during which federal enactments and amendments were not automatically adopted. None of those periods apply to the three years in question, however, with the result that federal administrative and judicial interpretations govern what the administrative posture of defendant should be insofar as Oregon's personal income tax is concerned.

In OAR 150-316.167(1), relating to withholding of

personal income tax, defendant provided that: "An 'employe' is any individual who performs services for another individual or organization having the right to control the employe as to the services to be performed and as to the manner of performance." Four sentences later, the following sentence appears: "Licensed real estate salesmen are employes, under the Oregon Real Estate Broker's Law." While clearly the sentence concluding that licensed real estate salesmen were employes was not based on administrative and judicial interpretations of the federal income tax law, as required by ORS 316.007 and ORS 316.032, the same cannot be said of the sentence defining an employe.

In 1943, the Internal Revenue Service took the position, generally, that real estate salesmen were employes. Mim 5504, 1943 CB, 1066. In 1950, the Eighth Circuit decided the case of *Dimmitt-Rickhoff-Bayer Real Estate Company v. Finnegan,* 179 F2d 882 (8th Cir 1950), 38 AFTR 1368, *cert denied* 340 US 823, 71 S Ct 57, 95 L Ed 605 (1950), holding that real estate salesmen were not employes but rather independent contractors because there was an absence of substantial evidence indicating an employer-employe relationship. The Internal Revenue Service followed *Dimmitt, supra,* "where the facts are substantially similar" and revoked Mim 5504, *supra.* Mim 6566, 1951-1 CB 108, 109. In 1976, Rev Rul 76-136 was issued. The Service indicated that it would continue to follow the *Dimmitt* case "where the facts are substantially the same as those in that case" and also indicated that "the mere fact that brokers require their salesmen to conform to regulatory legislation and established customs and practices obligatory upon the brokers would no longer, in and of itself, be treated by the Service as sufficient evidence of such control of the salesmen's manner and method of performance of their services as to make them employees of the brokers where there were no other facts to show such control, such as that the brokers implemented obtaining the salesmen's compliance by closely supervising or reviewing all the salesmen's activities or by requiring the salesmen to report all their activities to the brokers in detail on a frequent and regular basis."

In the same year, Rev Rul 67-137 was issued distinguishing the facts involved in Rev Rul 76-136. That was done by pointing out that the potential control over its salesmen was "implemented by the company's supervision

and review of their activities in frequent instances." Thus the salesmen in the facts involved in Rev Rul 76-137 were employes.

In 1978, Rev Rul 78-365 was issued whereby the Service revoked Rev Rul 76-136 and Rev Rul 76-137, *supra,* and reinstated Mim 6566, *supra.* The effect of reinstatement of Mim 6566 was that real estate salesmen were not employes where the facts were substantially the same as those in the *Dimmitt, supra,* case in the absence of other substantial evidence of an employe-employer relationship. This continued to be the Service's stance in the years involved in this matter, *i.e.,* 1978, 1979 and 1980.

OAR 150-316.167(1) does not reflect the shifting policies of the Internal Revenue Service and, accordingly, fails to follow, generally, the legislative policy contained in ORS 316.007 and, specifically, the legislative injunction of ORS 316.032.

In the absence of valid regulations by defendant governing the status of real estate salesmen, we turn to the decisions of the Oregon Supreme Court. In *Landberg v. State Industrial Acc. Com.,* 107 Or 498, 502, 215 P 594 (1923), the court observed that "the master must have the right to direct and control the details of the work and the manner and mode of its performance. The test of the control, which the employer has the right to exercise and to which the servant is subject, *means complete control:* See *Western Indemnity Co. v. Pillsbury,* 172 Cal. 807 (159 Pac. 721, 723). In performing the services the servant represents the will of the master and is under his *complete control and discretion* in all of the details of the work and in the mode and manner of its performance." (Emphasis supplied.)

In the California case cited in *Landberg, supra,* the court stated:

> "But in weighing the control exercised we must carefully distinguish between authoritative control and mere suggestion as to detail * * *." (*Western Indemnity Co. v. Pillsbury,* 172 Cal 807, 159 P 721, 724 (1916).)

The *Landberg, supra,* language was followed in a number of Oregon decisions, including *Harris v. State Ind. Acc. Com.,* 191 Or 254, 268, 230 P2d 175 (1951). But in *Harris,*

the court went forward to state that:

■ "The ultimate test of the employer-employees relation 'is not the actual exercise of control, but the right to exercise control—not the actual interference by the employer with the manner and method of accomplishing the result, but the right to interfere.'"

Further, the court stated that:

"[I]n determining whether the right of control exists 'no single fact is more conclusive * * * than the unrestricted right of the employer to end the particular service whenever he chooses, without regard to the final result of the work itself'." (191 Or at 269.)

The foregoing was repeated by the Supreme Court in *Nordling v. Johnston,* 205 Or 315, 332, 283 P2d 994, 287 P2d 420 (1955), and in *Jenkins v. AAA Heating,* 245 Or 382, 386-387, 421 P2d 971 (1966). The court, in *Jenkins, supra,* went on to state:

"But the exercise of some limited control by the employer over the work being done will not necessarily make the worker an employee rather than an independent contractor. * * * While there is no simple measure of the extent to which an employer may control a worker in the performance of his task without creating a master-servant relationship, control over performance remains the principal test."

This court, in *Herff Jones Co. v. Commission,* 2 OTR 207, 211 (1965), relied upon *Nordling, supra,* in finding that the plaintiff and four salesmen were employes. The court added an additional fact to the unrestricted right to fire, namely, "the right of either party to terminate the relationship without incurring liability to the other is a strong indication that the contract is one of employment. *Bowser v. State Indus. Accident Comm.,* 182 Or 42, 54, 185 P2d 891 (1947)." The Oregon Supreme Court affirmed that conclusion on appeal based on *Nordling, supra,* and *Jenkins, supra. Herff Jones Co. v. Tax Com.,* 247 Or 404, 430 P2d 998 (1967). Thus, pursuant to the foregoing Oregon case law, the determination of whether a person is an employe depends on the right to control performance. The determination, therefore, requires scrutiny of the agreement between Realty Group, Inc., and individual salespersons.

Realty Group, Inc.'s, motion for summary judgment

included, as Exhibit A to the affidavit of James R. Raze, an unexecuted copy of such an agreement. While an obvious attempt has been made to establish salespersons as independent contractors, e.g., the document is entitled "Independent Contractor Agreement" and the first sentence of section three provides: "Salesperson shall be solely responsible for determining the manner and means in which he or she performs his or her obligations under this agreement." Nevertheless, the document, as a whole, indicates that salespersons cannot take important steps in the consummation of sales of real estate without the broker's approval and supervision, e.g., one of the prime functions of the salesperson is to obtain listings (section one of the agreement), but the broker retains supervision and control over all aspects of the listing activities (sections three, four and six of the agreement). Mr. Raze's (designated broker for The Realty Group, Inc.) affidavit alleged that:

"3. * * * We do not want sales people who require supervision as to the details of their activities in listing and selling real property.

"* * * * *

"6. * * * Changes are only rarely suggested in listing agreements upon a broker's review. Changes in earnest money agreements are also not commonly suggested."

Mr. Raze's affidavit is not relevant. As Oregon case law has repeatedly indicated, it is the right to control the manner and method of accomplishing the result, not the actual exercise of control. In addition, Oregon case law indicates that whether the requisite control exists depends on (1) the unrestricted right to fire, and (2) the right of either party to terminate the relationship without incurring liability to the other. Both (1) and (2) are provided in Section 11 of The Realty Group, Inc.'s, agreement, i.e., "[t]his agreement and the relationship created hereunder may be terminated by either party at any time upon giving notice to the other, or may be terminated by Broker returning Salesperson's license to the Real Estate Commissioner of the state licensing Salesperson."

Accordingly, this court finds that as a matter of law salespersons sustain an employe relationship with plaintiff, The Realty Group, Inc., as employer. Now, therefore, it is hereby ORDERED that:

I. Plaintiff The Realty Group, Inc.'s, motion for summary judgment on the ground that it is entitled to a refund of amounts paid pursuant to ORS 267.385—Tri-County Metropolitan Transit District's excise tax on employers—is denied; and

II. Defendant and intervenor's motion for summary judgment on the ground that plaintiff The Realty Group, Inc., is not entitled to a refund of amounts paid pursuant to ORS 267.385 is granted.

The court finds, based on Oregon case law herein cited and a review of plaintiff Stan Wiley, Inc.'s, Procedures Manual, that, as a matter of law, salespersons sustain an employe relationship with the plaintiff Stan Wiley, Inc., as employer. Now, therefore, it is further

ORDERED that defendant and intervenor's motion for summary judgment on the ground that plaintiff Stan Wiley, Inc., is not entitled to a refund of amounts paid pursuant to ORS 267.385 is granted.