Argued and submitted January 29, affirmed July 9, reconsideration denied
August 20, 1985

## REALTY GROUP, INC.,
*Appellant,*

*v.*

## DEPARTMENT OF REVENUE et al,
*Respondents.*

## (TC 1950; SC S30938)

702 P2d 1075

Honorable Samuel B. Stewart, Judge (Order Allowing

Judgment) Honorable Edward H. Howell, Judge Pro Tem (Judgment).

Gile R. Downes, Portland, argued the cause for appellant. With him on the briefs was Holmes, DeFrancq & Schultz, Portland.

Elizabeth Stockdale, Assistant Attorney General, Salem, and Joel D. Kuntz, Portland, argued the cause for respondents. With them on the brief were Gersham Goldstein, Gregory C. Newton, and Stoel, Rives, Boley, Fraser & Wyse, Portland, and James C. Wallace, Assistant Attorney General, and Dave Frohnmayer, Attorney General, Salem.

Ray W. Shaw and Donald H. Upjohn, Salem, filed an *amicus curiae* brief on behalf of Oregon Association of Realtors. With them on the brief were Heltzel, Byers, Upjohn, Shaw & Williams, Salem.

LINDE, J.

## LINDE, J.

The disputed issue is whether real estate brokers' payments to real estate salespeople are "wages paid with respect to employment" for purposes of payroll taxes to transit districts.

Plaintiffs in this case and *Stan Wiley, Inc. v. Dept. of Rev.*, also decided today, are real estate brokers who paid such taxes to Tri-County Metropolitan Transit District and Lane Transit District and later claimed refunds on the grounds that licensed real estate sales personnel are not employees within the meaning of the transit district law. The Department of Revenue and the Oregon Tax Court denied the refunds, and the brokers appeal. We affirm.

The opposing contentions have been ably and thoroughly briefed and argued. Because the law has been amended and the tax years at issue here are of interest primarily to the parties, we need not set out the arguments in detail.

The taxes in question were enacted by the transit districts pursuant to ORS 267.385(1), which provides:

"* * * [A] district may by ordinance impose an excise tax on every employer equal to not more than six-tenths of one percent of the wages paid with respect to the employment of individuals. * * *"

The statute defines its terms in ORS 267.380:

"(1) As used in ORS 267.380 and 267.385, unless the context requires otherwise:

"(a) 'Employer' means:

"(A) A person who is in such relation to another person that the person may control the work of that other person and direct the manner in which it is to be done * * *.

"* * * * *

"(c) 'Wages' means remuneration for services performed by an employe for the employer * * *.

"* * * * *

"(2) As used in this section and ORS 267.385, 'wages' does not include remuneration paid:

"* * * * *

"(h) If the remuneration is not subject to withholding under ORS chapter 316."

In order to be taxable as "wages," therefore, remuneration must meet tests stated both positively and negatively. Remuneration must be "for services performed by an employe for the employer" as defined in subsection (1)(a), and it must not be excluded from withholding under the personal income tax law, ORS chapter 316.

This double test does not itself create any difficulty, because the definition of "wages" in ORS 316.162 is identical to that in ORS 267.380 quoted above.[1] What the reference to ORS chapter 316 excludes from the definition in ORS 267.380 is a list of specific types of remuneration that would be "wages" but for being expressly excluded from withholding by ORS 316.162(2)(a) through (h). Remuneration for real estate salespeople is not among those expressly excluded types of wages. What the brokers claim for the reference to remuneration "not subject to withholding under ORS chapter 316," rather, is that this reference makes federal law on the tax treatment of commissions earned by real estate salespeople applicable to the transit district tax. For this proposition, the brokers rely on two sections of the Personal Income Tax Act of 1969, ORS 316.007 and 316.012. We are not persuaded.

ORS 316.007 is a declaration of policy. It states:

"It is the intent of the Legislative Assembly, by the adoption of this chapter, in so far as possible, to make the Oregon personal income tax law identical in effect to the provisions of the federal Internal Revenue Code of 1954 relating to the measurement of taxable income of individuals, estates and trusts, modified as necessary by the state's jurisdiction to tax and the revenue needs of the state; to achieve this result by the application of the various provisions of the federal Internal Revenue Code relating to the definition of income, exceptions and exclusions therefrom, deductions (business and personal), accounting methods, taxation of trusts, estates and partnerships, basis, depreciation and other pertinent provisions relating to gross income as defined therein, modified as provided in this chapter, resulting in a

---

[1] ORS 316.162(2):

" 'Wages' means remuneration for services performed by an employe for an employer * * *."

final amount called 'taxable income'; and to impose a tax on residents of this state measured by taxable income wherever derived and to impose a tax on the income of nonresidents that is ascribable to sources within this state."

The pertinent text of ORS 316.012 provides:

"Any term used in this chapter has the same meaning as when used in a comparable context in the laws of the United States relating to federal income taxes, unless a different meaning is clearly required or the term is specifically defined in this chapter. * * *"

Neither section ties Oregon's withholding statutes to federal definitions of "wages."

■ In ORS 316.007, the legislature has clearly stated the purpose for which the Oregon personal income tax law is to follow federal provisions "relating to the definition of income, exceptions and exclusions therefrom, deductions," and other "provisions relating to gross income." The purpose is to make Oregon's provisions identical in effect to federal provisions *relating to the measurement of taxable income of individuals, estates and trusts,* in calculating a "final amount called 'taxable income'" on which the state's income tax is to be imposed. The sections of ORS chapter 316 that require an employer to withhold a part of an employee's wages do not relate to the measurement of the wage earner's taxable income. Withholding is designed to facilitate the collection of whatever personal income tax the wage earner owes, and ORS 316.162 to 316.212 for convenience relate the forms and procedures of withholding to parallel forms and procedures of the Internal Revenue Service, but the withholding section does not affect the calculation of the wage earner's taxable income and eventual income tax liability. The policy stated in ORS 316.007 does not apply.

■ ORS 316.012, in turn, states that a term used in ORS chapter 316 has the same meaning as its federal parallel "unless * * * the term is specifically defined in this chapter." The term "wages" is specifically defined in ORS 316.162(2), quoted above, so it is excluded from the parallel interpretation enjoined by ORS 316.012. That section, therefore, also does not apply. In fact, one of the key terms at issue here, the term "employer," is defined differently in the federal withholding law from the Oregon definition that plaintiffs want to tie to

the federal law.[2] The same difference in terms also excludes application of ORS 316.032, which directs the Department to "follow the administrative and judicial interpretations of the federal income tax law." The legislature did not intend to bind the Department to every federal tax case and Treasury regulation, but only to those which construe statutes that Oregon had either formally adopted or substantially copied. That is not the case here. *Compare* ORS 316.162(2) *with* 26 USC § 3401(a) (1981) (state and federal withholding statutes).

 We therefore examine the question whether the brokers' payments to their salespeople were taxable under the definitions of the transit district law.[3] To repeat, ORS

---

[2] ORS 316.162(3)(a) defines "employer" as:

"A person who is in such relation to another person that the person may control the work of that other person and direct the manner in which it is to be done; * * *"

26 USC § 3401(d) provides:

"* * * [T]he term 'employer' means the person for whom an individual performs or performed any service, of whatever nature, as the employee of such person * * *."

[3] A rule promulgated by the Department stated that "[l]icensed real estate salesmen are employes, under the Oregon Real Estate Broker's Law." OAR 150-316.167(1). The Department's order stated that "[I]t is axiomatic that an administrative agency like the Department of Revenue must follow its own regulations." After citing precedents to this effect, the Department reached the conclusion "that before any agency can abrogate its rule because of a subsequent legislative enactment, the interim amendments must be unambiguously contrary to the rule in question."

That conclusion overshot the mark. It fails to distinguish between rules that only announce the agency's interpretation of statutory provisions which operate of their own force without any rules (so-called "interpretive rules"), and rules made under a broad delegation of regulatory or managerial authority where the terms of the delegation have no direct regulatory impact on affected persons without such rules (so-called "legislative rules"). An agency can change or replace a legislative rule for any legitimate reason, so long as it remains within the explicit or implicit bounds of the policy delegated to it. An agency also may change an interpretive rule without awaiting amendment of the statutory or other terms that the rule interprets, if the agency concludes that a new formulation is appropriate to clarify its view of the terms in question.

The agency is bound to follow either kind of rule until it replaces the rule, but the validity of a rule can always be challenged by one in a procedural posture to do so. If a party convinces an agency that its interpretation of a statute is wrong, the agency is not bound to persist in the error.

Here OAR 150-316.167(1) interpreted the statutory term "employe." If the interpretation is consistent with the statute, the Department was correct to follow it; if inconsistent, it cannot broaden the reach of the statute.

267.380(1) defines "wages" as "remuneration for services performed by an employe for the employer," and it defines an "employer" as one who may control the work of another person and direct the manner in which the work is to be done.

The Tax Court first declared that the Department of Revenue had erred in failing to follow federal rulings with respect to the relationship between real estate brokers and salespersons. Thereafter, however, the court turned to the decisions of this court rather than federal decisions for judicial formulations of the distinction between the status of an employee and an independent contractor. *Stan Wiley, Inc. v. Dept. of Rev.,* 9 OTR 399, 403 (1984). We do not review the court's quotations here, except to note that such judicial generalizations are formulated in the decision of specific issues and should not be uncritically transferred into a different context.[4] The Tax Court concluded that the test of an employment relationship is the right of one party to control the other party's performance of the work to be done, whether or not such control is actually exercised in every particular circumstance. The court then held that the real estate brokers had such a right to control the performance of their sales personnel. It wrote that "while an obvious attempt has been made to establish salespersons as independent contractors" by an "Independent Contractor Agreement" that purported to make salespersons "solely responsible for determining the manner and means" of performance, nevertheless the brokers retained supervision and the right to approval or disapproval over important steps in the consummation of real estate sales arranged by a salesperson. 9 OTR at 405.

■■ When a statute specifically defines the employment relationship, it is unnecessary and potentially misleading to

---

[4] The need to use generalizations cautiously is shown by one of the tests quoted by the Oregon Tax Court, to the effect that an employment relationship is characterized by the right of either party to terminate the relationship without incurring liability. The right to terminate without liability is not incompatible with some kinds of independent contracts, while in some relations of undoubted "employment" the employer's right of discharge is severely confined by virtue of a collective bargaining agreement, an individual contract, or in the case of public employes, by tenure or civil service laws.

Most of the cases cited by the Oregon Tax Court (and by this court in an earlier tax case, *Herff Jones Co. v. Tax Co.,* 247 Or 404, 430 P2d 998 (1967), concern employment status for purposes of liability for tort damages or workers' compensation.

turn to formulations found in other statutory or common law decisions. Despite deeply ingrained professional habits to the contrary, the formulas stated by courts are not more authoritative than those enacted by the legislature. In this instance, the legislature, in ORS 267.380, expressly has made the right to "control the work of [the] other person and direct the manner in which it is to be done" the test of the employment relationship for purposes of the transit district tax, so it is immaterial how this court otherwise might evaluate the relationship between real estate brokers and licensed salespersons. The dispositive question is the extent to which the brokers may control and direct the work of the salespersons.

One person's right to control and direct the work of another must have a legal source. Ordinarily, in the absence of a statute, that right arises from the express or implied terms of a mutual agreement. It is a question of law, unless there is a factual dispute concerning the terms of the agreement. In the present cases, the Department claimed that the brokers had the requisite degree of control to be employers by virtue of statute as well as under their agreements with their salespersons.

■ The Department relies on the following characteristics imposed on the relationship between real estate brokers and salespersons during the years at issue by the real estate license law, ORS chapter 696, and regulations issued by the Real Estate Commissioner pursuant thereto. A real estate salesperson was licensed only as an agent of a specific broker named in the license. ORS 696.301(2), 696.301(3). The broker could terminate the salesperson's occupational activity by returning the license to the commissioner. ORS 696.221(1). Regulations required that advertising, solicitation, and closing of a real estate transaction be in the broker's name and under the broker's supervision, and that all funds be promptly transmitted to the broker. OAR 863-10-010(2); 863-10-040 (1978). They required the broker to exercise "personal, daily supervision" over associates and salespersons and expressly forbade the broker to let salespersons act on their own under merely "nominal supervision." OAR 863-10-043. These supervisory duties were a broker's legal obligations, not merely entrepreneurial rights or powers that the broker might choose

to assert or to modify by agreement with one or more salespersons. The broker could lose his own license for failure to exercise supervision over salespersons. Former ORS 696.301(30) (1979).

The Department submitted documents to show that the brokers' agreements with their salespersons corresponded to this obligatory degree of supervision, direction, and control, and the brokers, understandably, do not contend otherwise. They argue, rather, that various legislative actions, such as the removal of the terms "employer" and "employe" from the real estate license law, were intended to permit the status of independent contractors for real estate salespersons for purposes of federal tax law and the workers' compensation law. That may be, but the statutory test of employment for purposes of Oregon's withholding and transit district tax laws remained one person's authority to control and direct the work of another until 1983.[5] The Tax Court concluded that the brokers had the authority as a matter of law, and we agree with that conclusion on the grounds stated in this opinion.

That conclusion also makes unnecessary a remand to correct a procedural error of the Tax Court.

The brokers contend that the Tax Court erred in ruling on the motions for summary judgment without first conducting a hearing. They rely on ORCP 47 C., adopted by the Tax Court's Rule 47, which provides:

> "The motion shall be served at least 10 days before the time fixed for the hearing. The adverse party, prior to the day of the hearing, may serve opposing affidavits. The judgment sought shall be rendered forthwith if the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law. A summary judgment, interlocutory in character, may be rendered on the issue of liability alone although there is a genuine issue as to the amount of damages."

This rule corresponds to Federal Rule of Civil Procedure 56(c). It should serve as a cautionary lesson against

---

[5] Oregon Laws 1983, chapter 597, section 6, codified as ORS 316.209, allows qualified real estate salespeople to be treated as independent contractors for tax purposes.

uncritically copying into Oregon law texts used elsewhere in the expectation that this will gain the benefits, first, of someone else's expert drafting and also (somewhat contradictory to the first) of existing judicial interpretations of the text.

The problem with the text of this rule is that the rules nowhere provide an antecedent for the words "the hearing." It is difficult to hold a party to serving a motion "at least 10 days before the time fixed for the hearing," if there is nothing on which to schedule a "hearing" until a motion is filed. The federal courts have read FRCP 56(c) backwards, as an awkward way of saying that no hearing shall be set until at least ten days after the motion for summary judgment is served. They have wrestled with the problem whether the rule precludes them from entering summary judgments without a motion, whether a "hearing" requires oral argument, and if not, whether the rule nonetheless requires ten days' notice to the parties. *See, e.g., Capital Films Corp. v. Charles Fries Productions,* 628 F2d 387 (5th Cir 1980) and cases there cited; 10A Wright, Miller, and Kane, Federal Practice and Procedure 3-40, §§ 2719-20 (1983). The unsatisfactory text of ORCP 47 C. may well deserve the attention of the Council on Court Procedures.

■ The Tax Court, however, has adopted a rule governing pretrial motions which, although stated in the negative, appears to provide for oral argument when requested by counsel.[6] In this case, counsel did request a hearing on the motion filed by Realty Group, Inc., and the Tax Court erred in denying the motion without affording an opportunity for oral argument. This court, however, reviews decisions of the Tax Court "anew upon the record," ORS 305.445, 19.125(3), and has heard oral argument. Neither oral argument before the Tax Court nor the opportunity to submit further affidavits

---

[6] TC Rule 14 E provides:

"Oral arguments will not be heard on motions, applications or other matters preliminary to trial unless called for by the court or unless specifically requested by counsel. * * *."

The use of "not * * * unless" also is unsatisfactory drafting, because it states only the consequence if an event or condition does not occur. It does not state the consequence if the event or condition does occur but leaves the intention to be inferred. In this case, we infer that the Tax Court intended to provide the opportunity for oral argument if counsel does specifically request it.

would have affected the statutory grounds on which we affirm that court's decision. The error did not prejudice the plaintiffs.

The decision of the Oregon Tax Court is affirmed.