[No. 56879-1.    En Banc.    May 23, 1991.]

DANNY KLEIN, ET AL, *Respondents*, v. PYRODYNE
CORPORATION, *Petitioner.*

*Tewell & Findlay, Inc., P.S.*, by *David Tewell*, for petitioner.

*Ron Meyers*, for respondents.

GUY, J. — The plaintiffs in this case are persons injured when an aerial shell at a public fireworks exhibition went astray and exploded near them. The defendant is the pyrotechnic company hired to set up and discharge the fireworks. The issue before this court is whether pyrotechnicians are strictly liable for damages caused by fireworks displays. We hold that they are.

Defendant Pyrodyne Corporation (Pyrodyne) is a general contractor for aerial fireworks at public fireworks displays. Pyrodyne contracted to procure fireworks, to provide pyrotechnic operators, and to display the fireworks at the Western Washington State Fairgrounds in Puyallup, Washington, on July 4, 1987. All operators of the fireworks display were Pyrodyne employees acting within the scope of their employment duties.

As required by Washington statute, Pyrodyne purchased a $1 million insurance policy prior to the fireworks show. The policy provided $1 million coverage for each occurrence of bodily injury or property damage liability. Plaintiffs allege that Pyrodyne failed to carry out a number of the

other statutory and regulatory requirements in preparing for and setting off the fireworks. For example, they allege that Pyrodyne failed to properly bury the mortar tubes prior to detonation, failed to provide a diagram of the display and surrounding environment to the local government, failed to provide crowd control monitors, and failed to keep the invitees at the mandated safe distance.

During the fireworks display, one of the 5-inch mortars was knocked into a horizontal position. From this position an aerial shell inside was ignited and discharged. The shell flew 500 feet in a trajectory parallel to the earth and exploded near the crowd of onlookers. Plaintiffs Danny and Marion Klein were injured by the explosion. Mr. Klein's clothing was set on fire, and he suffered facial burns and serious injury to his eyes.

The parties provide conflicting explanations of the cause of the improper horizontal discharge of the shell. Pyrodyne argues that the accident was caused by a 5-inch shell detonating in its aboveground mortar tube without ever leaving the ground.[1] Pyrodyne asserts that this detonation caused another mortar tube to be knocked over, ignited, and shot off horizontally. In contrast, the Kleins contend that the misdirected shell resulted because Pyrodyne's employees improperly set up the display. They further note that because all of the evidence exploded, there is no means of proving the cause of the misfire.

The Kleins brought suit against Pyrodyne under theories of products liability and strict liability.[2] Pyrodyne filed a motion for summary judgment, which the trial court granted as to the products liability claim. The trial court denied Pyrodyne's summary judgment motion regarding the Kleins' strict liability claim, holding that Pyrodyne was

---

[1] Plaintiffs note that Pyrodyne's argument is based upon an affidavit made by Pyrodyne's president, Jerry Elrod, who was not present at the display.

[2] Defendants kept no record as to the manufacturer of the aerial bombs used in the July 4, 1987, display; thus, the manufacturer was not identifiable.

strictly liable without fault and ordering summary judgment in favor of the Kleins on the issue of liability. Pyrodyne appealed the order of partial summary judgment to the Court of Appeals, which certified the case to this court. Pyrodyne is appealing solely as to the trial court's holding that strict liability is the appropriate standard of liability for pyrotechnicians. A strict liability claim against pyrotechnicians for damages caused by fireworks displays presents a case of first impression in Washington.

ANALYSIS

I

FIREWORKS DISPLAYS AS ABNORMALLY
DANGEROUS ACTIVITIES

The Kleins contend that strict liability is the appropriate standard to determine the culpability of Pyrodyne because Pyrodyne was participating in an abnormally dangerous activity. This court has addressed liability for fireworks display injuries on one prior occasion. In *Callahan v. Keystone Fireworks Mfg. Co.*, 72 Wn.2d 823, 435 P.2d 626 (1967), this court held that a pyrotechnician could maintain a negligence suit against the manufacturer of the defective fireworks. The issue as to whether fireworks displays are abnormally dangerous activities subject to strict liability was not raised before the court at that time, and hence remains open for this court to decide.

The modern doctrine of strict liability for abnormally dangerous activities derives from *Fletcher v. Rylands*, 159 Eng. Rep. 737 (1865), *rev'd*, 1 L.R.-Ex. 265, [1866] All E.R. 1, 6, *aff'd sub nom. Rylands v. Fletcher*, 3 L.R.-H.L. 330, [1868] All E.R. 1, 12, in which the defendant's reservoir flooded mine shafts on the plaintiff's adjoining land. *Rylands v. Fletcher supra*, has come to stand for the rule that "the defendant will be liable when he damages another by a thing or activity unduly dangerous and inappropriate to the place where it is maintained, in the light of the character of that place and its surroundings." W. Keeton,

D. Dobbs, R. Keeton & D. Owen, *Prosser and Keeton on Torts* § 78, at 547-48 (5th ed. 1984).

■ The basic principle of *Rylands v. Fletcher, supra,* has been accepted by the Restatement (Second) of Torts (1977). *See generally Prosser and Keeton on Torts* § 78, at 551 (explaining that the relevant Restatement sections differ in some respects from the *Rylands* doctrine). Section 519 of the Restatement provides that any party carrying on an "abnormally dangerous activity" is strictly liable for ensuing damages. The test for what constitutes such an activity is stated in section 520 of the Restatement. Both Restatement sections have been adopted by this court, and determination of whether an activity is an "abnormally dangerous activity" is a question of law. *New Meadows Holding Co. v. Washington Water Power Co.,* 102 Wn.2d 495, 500, 687 P.2d 212 (1984); *Langan v. Valicopters, Inc.,* 88 Wn.2d 855, 567 P.2d 218 (1977); *Siegler v. Kuhlman,* 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied,* 411 U.S. 983 (1973).

■ Section 520 of the Restatement lists six factors that are to be considered in determining whether an activity is "abnormally dangerous". The factors are as follows:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.

Restatement (Second) of Torts § 520 (1977). As we previously recognized in *Langan v. Valicopters, Inc., supra* at 861-62 (citing Restatement (Second) of Torts § 520,

comment *f* (Tent. Draft 10, 1964)), the comments to section 520 explain how these factors should be evaluated:

> Any one of them is not necessarily sufficient of itself in a particular case, and ordinarily several of them will be required for strict liability. On the other hand, it is not necessary that each of them be present, especially if others weigh heavily. Because of the interplay of these various factors, it is not possible to reduce abnormally dangerous activities to any definition. The essential question is whether the risk created is so unusual, either because of its magnitude or because of the circumstances surrounding it, as to justify the imposition of strict liability for the harm that results from it, even though it is carried on with all reasonable care.

Restatement (Second) of Torts § 520, comment *f* (1977). Examination of these factors persuades us that fireworks displays are abnormally dangerous activities justifying the imposition of strict liability.

▮ We find that the factors stated in clauses (a), (b), and (c) are all present in the case of fireworks displays. Anytime a person ignites aerial shells or rockets with the intention of sending them aloft to explode in the presence of large crowds of people, a high risk of serious personal injury or property damage is created. That risk arises because of the possibility that a shell or rocket will malfunction or be misdirected. Furthermore, no matter how much care pyrotechnicians exercise, they cannot entirely eliminate the high risk inherent in setting off powerful explosives such as fireworks near crowds.

The dangerousness of fireworks displays is evidenced by the elaborate scheme of administrative regulations with which pyrotechnicians must comply. Pyrotechnicians must be licensed to conduct public displays of special fireworks. WAC 212-17-220. To obtain such a license, the pyrotechnician must take and pass a written examination administered by the director of fire protection, and must submit evidence of qualifications and experience, including

"participation in the firing of at least six public displays as an assistant, at least one of which shall have been in the current or preceding year." WAC 212-17-225. The pyrotechnician's application for a license must be investigated by the director of fire protection, who must confirm that the applicant is competent and experienced. WAC 212-17-230. Licensed pyrotechnicians are charged with ensuring that the display is set up in accordance with all rules and regulations. WAC 212-17-235. Regulations also govern such matters as the way in which the fireworks at public displays are constructed, stored, installed, and fired. WAC 212-17-305, -310, -315, and -335. The necessity for such regulations demonstrates the dangerousness of fireworks displays.

Pyrodyne argues that if the regulations are complied with, then the high degree of risk otherwise inherent in the displays can be eliminated. Although we recognize that the high risk can be reduced, we do not agree that it can be eliminated. Setting off powerful fireworks near large crowds remains a highly risky activity even when the safety precautions mandated by statutes and regulations are followed. The Legislature appears to agree, for it has declared that in order to obtain a license to conduct a public fireworks display, a pyrotechnician must first obtain a surety bond or a certificate of insurance, the amount of which must be at least $1 million for each event.[3] RCW 70.77.285, .295.

The factors stated in clauses (a), (b), and (c) together, and sometimes one of them alone, express what is commonly meant by saying an activity is ultrahazardous. Restatement (Second) of Torts § 520, comment h (1977). As the Restatement explains, however, "[l]iability for abnormally danger-

---

[3]The fact that the Legislature requires a liability policy for an activity does not in itself imply that the Legislature views the activity as being abnormally dangerous for purposes of imposing strict liability. The fact that the Legislature has mandated a $1 million liability policy for pyrotechnicians, however, does suggest that the Legislature views public fireworks displays as involving a high risk even when the appropriate safety precautions are taken.

ous activities is not . . . a matter of these three factors alone, and those stated in Clauses (d), (e), and (f) must still be taken into account." Restatement (Second) of Torts § 520, comment *h* (1977); *see also New Meadows Holding Co. v. Washington Water Power Co., supra* at 504 (Pearson, J., concurring) ("strict liability . . . may not be imposed absent the presence of at least one of the factors stated in clauses (d), (e), and (f)").

The factor expressed in clause (d) concerns the extent to which the activity is not a matter "of common usage". The Restatement explains that "[a]n activity is a matter of common usage if it is customarily carried on by the great mass of mankind or by many people in the community." Restatement (Second) of Torts § 520, comment *i* (1977). As examples of activities that are not matters of common usage, the Restatement comments offer driving a tank, blasting, the manufacture, storage, transportation, and use of high explosives, and drilling for oil. The deciding characteristic is that few persons engage in these activities. Likewise, relatively few persons conduct public fireworks displays. Therefore, presenting public fireworks displays is not a matter of common usage.

Pyrodyne argues that the factor stated in clause (d) is not met because fireworks are a common way to celebrate the Fourth of July. We reject this argument. Although fireworks are frequently and regularly enjoyed by the public, few persons set off special fireworks displays. Indeed, the general public is prohibited by statute from making public fireworks displays insofar as anyone wishing to do so must first obtain a license. RCW 70.77.255.

The factor stated in clause (e) requires analysis of the appropriateness of the activity to the place where it was carried on. In this case, the fireworks display was conducted at the Puyallup Fairgrounds. Although some locations — such as over water — may be safer, the Puyallup Fairgrounds is an appropriate place for a fireworks show

because the audience can be seated at a reasonable distance from the display. Therefore, the clause (e) factor is not present in this case.

The factor stated in clause (f) requires analysis of the extent to which the value of fireworks to the community outweighs its dangerous attributes. We do not find that this factor is present here. This country has a long-standing tradition of fireworks on the Fourth of July. That tradition suggests that we as a society have decided that the value of fireworks on the day celebrating our national independence and unity outweighs the risks of injuries and damage.

In sum, we find that setting off public fireworks displays satisfies four of the six conditions under the Restatement test; that is, it is an activity that is not "of common usage" and that presents an ineliminably high risk of serious bodily injury or property damage. We therefore hold that conducting public fireworks displays is an abnormally dangerous activity justifying the imposition of strict liability.

This conclusion is consistent with the results reached in cases involving damages caused by detonating dynamite. This court has recognized that parties detonating dynamite are strictly liable for the damages caused by such blasting. *See Foster v. Preston Mill Co.*, 44 Wn.2d 440, 443, 268 P.2d 645 (1954); *see also Bringle v. Lloyd*, 13 Wn. App. 844, 537 P.2d 1060 (1975); *Erickson Paving Co. v. Yardley Drilling Co.*, 7 Wn. App. 681, 502 P.2d 334 (1972). There are a number of similarities between fireworks and dynamite. Both activities involve licensed experts intentionally igniting for profit explosives that have great potential for causing damage. Moreover, after the explosion no evidence remains as to the original explosive. The notable difference between fireworks and dynamite is that with fireworks the public is invited to watch the display and with dynamite the public is generally prohibited from being near the blasting

location. Because detonating dynamite is subject to strict liability, and because of the similarities between fireworks and dynamite, strict liability is also an appropriate standard for determining the standard of liability for pyrotechnicians for any damages caused by their fireworks displays.

## II
### PUBLIC POLICY AND STRICT LIABILITY FOR FIREWORKS DISPLAYS

Policy considerations also support imposing strict liability on pyrotechnicians for damages caused by their public fireworks displays, although such considerations are not alone sufficient to justify that conclusion. Most basic is the question as to who should bear the loss when an innocent person suffers injury through the nonculpable but abnormally dangerous activities of another. In the case of public fireworks displays, fairness weighs in favor of requiring the pyrotechnicians who present the displays to bear the loss rather than the unfortunate spectators who suffer the injuries. In addition,

> [t]he rule of strict liability rests not only upon the ultimate idea of rectifying a wrong and putting the burden where it should belong as a matter of abstract justice, that is, upon the one of the two innocent parties whose acts instigated or made the harm possible, but it also rests on problems of proof:
>> One of these common features is that the person harmed would encounter a difficult problem of proof if some other standard of liability were applied. For example, the disasters caused by those who engage in abnormally dangerous or extra-hazardous activities frequently destroy all evidence of what in fact occurred, other than that the activity was being carried on. Certainly this is true with explosions of dynamite, large quantities of gasoline, or other explosives.

*Siegler v. Kuhlman*, 81 Wn.2d 448, 455, 502 P.2d 1181 (1972) (quoting Peck, *Negligence and Liability Without Fault in Tort Law*, 46 Wash. L. Rev. 225, 240 (1971)), *cert. denied*, 411 U.S. 983 (1973). In the present case, all evi-

dence was destroyed as to what caused the misfire of the shell that injured the Kleins. Therefore, the problem of proof this case presents for the plaintiffs also supports imposing strict liability on Pyrodyne.

## III
### STATUTORY STRICT LIABILITY FOR FIREWORKS

■ As well as holding Pyrodyne strictly liable on the basis that fireworks displays are abnormally dangerous activities, we also hold that RCW 70.77.285 imposes statutory strict liability.[4] The statute, which mandates insurance coverage to pay for *all* damages resulting from fireworks displays, establishes strict liability for any ensuing injuries.

An example of a statute which the appellate court has held to be a strict liability statute is RCW 16.08.040, which reads in part:

> The owner of any dog which shall bite any person . . . shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.

*See Beeler v. Hickman,* 50 Wn. App. 746, 750-51, 750 P.2d 1282 (1988). The court in *Beeler* held that the language of the statute clearly established strict liability for the owner of the dog. Although RCW 70.77.285 does not establish strict liability in the same language as the dog bite statute, it nonetheless provides that pyrotechnicians shall pay for all

---

[4]RCW 70.77.285 states:

"Except as provided in RCW 70.77.355, the applicant for a permit under RCW 70.77.260(2) for a public display of fireworks shall include with the application evidence of a bond issued by an authorized surety company. The bond shall be in the amount required by RCW 70.77.295 and shall be conditioned upon the applicant's payment of all damages to persons or property resulting from or caused by such public display of fireworks, or any negligence on the part of the applicant or its agents, servants, employees, or subcontractors in the presentation of the display. Instead of a bond, the applicant may include a certificate of insurance evidencing the carrying of appropriate public liability insurance in the amount required by RCW 70.77.295 for the benefit of the person named therein as assured, as evidence of ability to respond in damages. The local fire official receiving the application shall approve the bond or insurance if it meets the requirements of this section."

damages to persons or property resulting from fireworks displays.

■ RCW 70.77.285 has been amended twice since it was enacted in 1961. Laws of 1961, ch. 228, § 34, p. 2027; Laws of 1982, ch. 230, § 16, p. 976; Laws of 1984, ch. 249, § 15, p. 1253. Neither amendment changed the original disjunctive language mandating liability insurance coverage for "all damages to persons or property . . . *or* any negligence on the part of the applicant". The statutory language clearly indicates that the Legislature intended pyrotechnicians to carry insurance to cover any damages incurred as a result of the fireworks display. The rule of construction applied to the disjunctive "or" mandates that by use of "or", a failure to comply with any requirement in the statute imposes liability. 1A N. Singer, *Statutory Construction* § 21.14, at 127 (4th ed. 1985). Thus, by utilizing the disjunctive "or" the Legislature indicated that damages will be owed for all injuries caused by the fireworks display, regardless of whether they resulted from the pyrotechnician's negligence.[5]

■ Furthermore, no part of a statute should be deemed inoperative or superfluous unless it is the result of obvious mistake or error. *Cox v. Helenius*, 103 Wn.2d 383, 387-88, 693 P.2d 683 (1985); *Newschwander v. Board of Trustees of Wash. State Teachers Retirement Sys.*, 94 Wn.2d 701, 707, 620 P.2d 88 (1980). This requires that every word, clause, and sentence of a statute be given effect, if possible. Pursuant to this requirement, both clauses of RCW 70.77.285 should be given effect. Therefore, it is necessary to interpret the statute as mandating coverage of all damages caused by fireworks displays, regardless of whether those damages were caused by negligence of the pyrotechnicians.

---

[5]RCW 70.77.285 was enacted prior to the Washington adoption of the strict liability standard. The Restatement of Torts regarding abnormally dangerous activities was drafted in 1964. This court first applied the strict liability standard to abnormally dangerous activities in *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied*, 411 U.S. 983 (1973). That case stated, however, that strict liability was not a novel concept and that it was at least as old as *Rylands v. Fletcher, supra* at 453.

## IV
### POSSIBLE NEGLIGENT MANUFACTURE
### AS AN INTERVENING FORCE

Pyrodyne argues that even if there is strict liability for fireworks, its liability under the facts of this case is cut off by the manufacturer's negligence, the existence of which we assume for purposes of evaluating the propriety of the trial court's summary judgment. According to Pyrodyne, a shell detonated without leaving the mortar box because it was negligently manufactured. This detonation, Pyrodyne asserts, was what caused the misfire of the second shell, which in turn resulted in the Kleins' injuries. Pyrodyne reasons that the manufacturer's negligence acted as an intervening or outside force that cuts off Pyrodyne's liability.

In support of its position, Pyrodyne relies upon *Siegler v. Kuhlman, supra,* and *New Meadows Holding Co. v. Washington Water Power Co.,* 102 Wn.2d 495, 687 P.2d 212 (1984). In *Siegler,* a young woman was killed in an explosion when the car she was driving encountered a pool of thousands of gallons of gasoline spilled from a gasoline truck. This court held that transporting gasoline in great quantities along public highways and streets is an abnormally dangerous activity that calls for the application of strict liability. *Siegler,* at 459-60. Justice Rosellini concurred, but stated:

> I think the opinion should make clear, however, that the owner of the vehicle will be held strictly liable only for damages caused when the flammable or explosive substance is allowed to escape without the apparent intervention of any outside force beyond the control of the manufacturer, the owner, or the operator of the vehicle hauling it. I do not think the majority means to suggest that if another vehicle, negligently driven, collided with the truck in question, the truck owner would be held liable for the damage.

*Siegler,* at 460 (Rosellini, J., concurring). In *New Meadows Holding Co.,* the plaintiff was injured when he attempted to light an oil stove and unwittingly ignited natural gas leak-

ing from a damaged gas line several blocks away. The leak allegedly was caused several years earlier when workers laying a telephone cable damaged the gas line. This court held that the transmission of natural gas through underground lines is not an abnormally dangerous activity justifying the imposition of strict liability. *New Meadows Holding Co.*, at 503. In dicta, we also stated that the rule of strict liability should not apply where there is the intervention of an outside force beyond the defendant's control, and that the gas leak was caused by such an outside force. *New Meadows Holding Co.*, at 503. Pyrodyne reasons that the shell manufacturer's negligence in supplying a defective shell, like the actions of the cable-laying workers who damaged the gas line in *New Meadows Holding Co.*, provided an outside force beyond Pyrodyne's control, and that therefore strict liability should not apply.

We note that the Restatement (Second) of Torts takes a position contrary to that advocated by Pyrodyne. Section 522 of the Restatement provides that:

> One carrying on an abnormally dangerous activity is subject to strict liability for the resulting harm although it is caused by the unexpectable
>   (a) innocent, negligent or reckless conduct of a third person . . ..

Restatement (Second) of Torts § 522 (1977). The comment to section 522 explains that "[i]f the risk [from an abnormally dangerous activity] ripens into injury, it is immaterial that the harm occurs through the unexpectable action of a human being". Restatement (Second) of Torts § 522, comment *a* (1977).

■ Thus, on the one hand, Pyrodyne urges us to adopt the view that any intervention by an outside force beyond the defendant's control is sufficient to relieve the defendant from strict liability for an abnormally dangerous activity. On the other hand, section 522 provides that no negligent intervention by a third person will relieve the defendant

from strict liability for abnormally dangerous activities. We reject both positions. Contrary to section 522, we hold that a third person's intervening acts of negligence will sometimes provide a defense from liability for those carrying on an abnormally dangerous activity. Contrary to the implication Pyrodyne would have us draw from the dicta in *New Meadows Holding Co.* and the *Siegler* concurrence, we hold that a defendant may be held strictly liable for injuries arising from an abnormally dangerous activity even when those injuries were in part caused by the intervening acts of a third person over whom the defendant had no control.

A basic principle regarding the scope of legal liability for strict liability is that the sequence of events between the defendant's conduct and the plaintiff's injury must have occurred without the intervention of some unexpected, independent cause:

> The sequence of events must have been such that it is not unfair to hold the defendant liable therefor. Here we find the ordinary rules governing legal causation quite adequate to state the law. Thus, although accumulation of water is extra-hazardous because its escape involves a risk of serious damage to adjoining property holders, nevertheless the escape must occur in the ordinary course of nature, and if some superseding cause occasions the escape there is no liability. *We have such a superseding cause where the escape is caused by the act of God or by a vis major which defendant is not bound as a reasonable man to anticipate.* Even the gnawing of a rat may be such an unexpected independent cause as to make it unjust to hold defendant liable. *So, also, if the escape of the water is brought about by the intervening wrongful act of a third person which was not foreseeable under the circumstances, the defendant is relieved from liability.*

(Citations omitted. Italics ours.) Harper, *Liability Without Fault and Proximate Cause*, 30 Mich. L. Rev. 1001, 1009-10 (1932); *see also Prosser and Keeton on Torts* § 79, at 563-64. Conversely, if the damage or injury to the plaintiff was brought about in a manner that *was* foreseeable under the circumstances, then the defendant is not relieved from liability. *See Galbreath v. Engineering Constr. Corp.*, 149 Ind. App. 347, 273 N.E.2d 121, 56 A.L.R.3d 1002 (1971) (blasting

is an extrahazardous activity that gives rise to liability for all resulting foreseeable injuries).

We hold that intervening acts of third persons serve to relieve the defendant from strict liability for abnormally dangerous activities only if those acts were unforeseeable in relation to the extraordinary risk created by the activity. *Cf. Herberg v. Swartz*, 89 Wn.2d 916, 578 P.2d 17 (1978) (intervening but foreseeable acts of third persons are no defense to liability in negligence); Restatement (Second) of Torts § 447 (1977) (same). The rationale for this rule is that it encourages those who conduct abnormally dangerous activities to anticipate and take precautions against the possible negligence of third persons. Where the third person's negligence is beyond the actor's control, this rule, unlike the *Siegler* dicta, nonetheless imposes strict liability if the third person negligence was reasonably foreseeable. Such a result allocates the economic burden of injuries arising from the forseeable negligence of third persons to the party best able to plan for it and to bear it — the actor carrying on the abnormally dangerous activity.[6]

In the present case, negligence on the part of the fireworks manufacturer is readily foreseeable in relation to the extraordinary risk created by conducting a public fireworks display. Therefore, even if such negligence may properly be regarded as an intervening cause, an issue we need not decide, it cannot function to relieve Pyrodyne from liability.[7] This is not to say, however, that in a proper case a defendant in a strict liability action could not pursue a

---

[6]By this analysis we do not license the imposition of negligence concepts onto the law of strict liability. We merely recognize a limited defense to liability for abnormally dangerous activities where the injury resulted from the unforeseeable intervention of a third person.

[7]An intervening cause may be defined as a force that actively operates to produce harm to another after the actor's act or omission has been committed. *See* Restatement (Second) of Torts § 441(1) (1977) (defining "intervening cause" in negligence context). The manufacturer's alleged negligence occurred prior to Pyrodyne's fireworks display, but it actively operated to produce harm only after the aerial shells had been ignited.

claim against a third party and enforce a right of contribution to an extent proportionate to that party's fault.[8]

## CONCLUSION

We hold that Pyrodyne Corporation is strictly liable for all damages suffered as a result of the July 1987 fireworks display. Detonating fireworks displays constitutes an abnormally dangerous activity warranting strict liability. Public policy also supports this conclusion. Furthermore, RCW 70.77.285 mandates the payment of all damages caused by fireworks displays, regardless of whether those damages were due to the pyrotechnicians' negligence. This establishes the standard of strict liability for pyrotechnicians. Therefore, we affirm the decision of the trial court.

DORE, C.J., and UTTER, BRACHTENBACH, ANDERSEN, and DURHAM, JJ., concur.

DOLLIVER, J. (concurring) — I concur fully with the result reached by the majority. In my opinion the statute, RCW 70.77.285, is decisive. While I harbor some belief the Legislature may not have intended the result reached by the majority, legislative intent is irrelevant when the language of the statute is plain on its face.

I am not in agreement, however, with the analysis reached by the majority relative to the application of Restatement (Second) of Torts § 520 (1977), which characterizes fireworks displays as "abnormally dangerous". Even

---

[8]Under RCW 4.22.040,

> [a] right of contribution exists between or among two or more persons who are jointly and severally liable upon the same indivisible claim for the same injury, death or harm . . . The basis for contribution among liable persons is the comparative fault of each such person.

The term "fault" is defined to include, *inter alia*, acts that subject a person to strict tort liability. RCW 4.22.015. While the issue is not before us and we do not here decide it, we caution that RCW 4.22.040 may not create a right to an independent contribution action against a third person where that person was not a party to the original action. Whether the doctrine of equitable subrogation is eliminated under RCW 4.22.040 has not been examined.

if I agreed with the Restatement analysis, I believe it is an act of supererogation and need not and should not be contained in the opinion. Where there is one good reason — and it is surely present here — there is no necessity for multiple reasons.

I first note that *no other jurisdiction* has adopted a common law rule of strict liability for fireworks displays. While this state regularly does things differently from its companion jurisdictions and, indeed, its uniqueness is many times a source of justifiable pride, extreme care should be exercised before embarking on a new doctrine foreign to this state as well as to all others.

A party engaging in an abnormally dangerous activity is strictly liable for any damages which might ensue. *See New Meadows Holding Co. v. Washington Water Power Co.*, 102 Wn.2d 495, 687 P.2d 212 (1984); *Langan v. Valicopters, Inc.*, 88 Wn.2d 855, 567 P.2d 218 (1977); *Siegler v. Kuhlman*, 81 Wn.2d 448, 502 P.2d 1181 (1972), *cert. denied*, 411 U.S. 983 (1973). The majority points to Restatement (Second) of Torts § 520 (1977) with its six factors to be considered in determining whether an activity is "abnormally dangerous".

The six factors in section 520 are:

(a) existence of a high degree of risk of some harm to the person, land or chattels of others;
(b) likelihood that the harm that results from it will be great;
(c) inability to eliminate the risk by the exercise of reasonable care;
(d) extent to which the activity is not a matter of common usage;
(e) inappropriateness of the activity to the place where it is carried on; and
(f) extent to which its value to the community is outweighed by its dangerous attributes.

The majority claims factors (a), (b), (c), and (d) are present while factors (e) and (f) are not present. I agree factors (e) and (f) do not apply for the reasons given by the majority. I also agree factors (a) and (b) are present. Where

I disagree with the majority is in whether factors (c) and (d) are present. The majority says yes, I say no.

Fireworks, no less than motor vehicles, for example, are high risk instrumentalities. In reality, all instrumentalities inevitably involve some degree of risk. Nothing in human life is risk free. The real issue is whether the hazard can be reduced to acceptable limits. This analysis is particularly apt where, as here, the likelihood of injury to significant numbers of persons is great unless the risk is significantly reduced. Blasting at some remove from civilization is one thing; public, urban fireworks displays are another matter.

It is apparent the Legislature, recognizing the dangers of public fireworks displays, attempted to regulate comprehensively fireworks displays. RCW 70.77 (State Fireworks Law). There are strict and specific safety and licensing provisions. Before a license can be issued by the State, there must be a finding "that the granting of such license would not be contrary to *public safety or welfare*". (Italics mine.) RCW 70.77.330. *See also* RCW 70.77.285, .355-.375, .410, .415. Section 520(c) only requires the elimination of "a high degree of risk" not the elimination of all risk. The Legislature has made the determination, through the legislative process, that in fact the "high degree of risk" inherent in public fireworks displays can adequately be reduced by the "reasonable care" required by the statute. This being so, I do not believe this court should use a random case, as here, to tamper with this legislative judgment. Factor (c) has not been met.

In discussing factor (d), the majority states that since "few persons set off special fireworks displays" they are not a matter of common usage. Majority, at 9. I believe the majority misconstrues factor (d). The Restatement comment on clause (d) discusses activities carried on by only a few persons, *e.g.*, blasting, the transportation of high explosives, the drilling of oil wells. What is significant is that each of the activities used for illustrative purposes is not only an activity which is not a matter of common usage, but it is

also a solitary activity. In contrast to the large crowds which attend public fireworks displays, the examples listed in comment *d* are not for spectators and are done away from the public. Restatement (Second) of Torts § 520, comment *d*, at 40 (1977). The viewing of a public fireworks display is in fact, in the words of the comment on clause (d), "customarily carried on by the great mass of mankind or by many people in the community." Comment *i*, at 39. None of the examples in the comment are in any way similar to public fireworks displays. While it is true the setting up and setting off of the fireworks in public displays are done by very few people, the more important "activity" is viewing the fireworks display. I would find factor (d) is not met.

I also disagree with the majority's treatment of the six factors as acting only in favor of strict liability. Properly construed, each of the factors may also mitigate against strict liability. In *New Meadows*, we expressly stated, "Factors (d), (e), and (f) clearly weigh against imposition of strict liability." *New Meadows*, 102 Wn.2d at 502. The majority concedes "the value of fireworks to the community outweighs its dangerous attributes." Majority, at 10. Properly construed, therefore, factor (f) is not merely a nullity in the strict liability analysis, but should actually mitigate against the imposition of strict liability.

Thus, by my analysis, only two of the six factors in section 520 are met and one factor weighs against strict liability. The penultimate paragraph in the comment on clause (c) states:

> A combination of the factors stated in Clauses (a), (b) and (c), or sometimes any one of them alone, is commonly expressed by saying that the activity is "ultrahazardous," or "extra-hazardous." *Liability for abnormally dangerous activities is not, however, a matter of these three factors alone, and those stated in Clauses (d), (e), and (f) must still be taken into account.*

(Italics mine.) Comment *h*, at 39. *See also New Meadows*, 102 Wn.2d at 503-04 (Pearson, J., concurring) ("Strict liability may not be imposed under the Restatement (Second) of

Torts § 520 (1977) on the basis of factors (a) and (b) alone.").
I would hold pyrotechnicians licensed under RCW 70.77 are
not strictly liable for damages caused by fireworks displays.

Finally, it is my belief that the Legislature has abrogated
the common law in the area of the control of fireworks
displays and thus section 520 would not apply. Numerous
courts have adopted the principle that a statute covering
the entire subject area necessarily abrogates the common
law in the area. The Wyoming Supreme Court has stated:

> Inasmuch as our statutes deal with the subject extensively
> and provide a remedy which the legislature apparently consi-
> dered sufficient, it is difficult to argue from a commonsense
> point of view, that statutes have not superseded and abrogated
> the common law. As stated in In re Roberts' Estate, 4[58] Wyo.
> 438, 133 P.2d 492, 500 [(1943)], *if a statute covers the whole
> subject matter, the abrogation of the common law on the same
> subject will necessarily be implied.*

(Italics mine.) *Schlattman v. Stone*, 511 P.2d 959, 961 (Wyo.
1973); *see also Casey v. Massachusetts Elec. Co.*, 392 Mass.
876, 883 n.12, 467 N.E.2d 1358 (1984); *State v. Salafia*, 29
Conn. Supp. 305, 313, 284 A.2d 576 (Sup. Ct. 1971).

Although Washington courts have never explicitly stated
the abrogation rule, at least two cases have impliedly fol-
lowed it. In *Washington Water Power Co. v. Graybar Elec.
Co.*, 112 Wn.2d 847, 774 P.2d 1199 (1989), we interpreted
RCW 7.72, the Washington products liability act (WPLA), to
preempt common law liability remedies. We based our con-
clusion on WPLA's broad, all-inclusive definition of a
product liability claim. *Washington Water Power Co.*, 112
Wn.2d at 853-54. Earlier in *Baum v. Murray*, 23 Wn.2d 890,
896, 162 P.2d 801 (1945) this court also stated:

> We think, however, that when a statute is enacted by the
> legislature covering generally a certain subject of substantive
> law it should be followed and applied by the courts wherever
> applicable, irrespective of what the common law or rule of
> decision may have been theretofore . . ..

Although this statement does not expressly provide for
abrogation, it supports the principle.

The case law also supports the viewpoint that it is unnecessary and even dangerous to refer to the common law where statutory provisions cover the subject matter. The Oregon Supreme Court has stated:

> When a statute specifically defines the employment relationship, it is unnecessary and potentially misleading to turn to formulations found in other statutory or common law decisions. Despite deeply ingrained professional habits to the contrary, the formulas stated by courts are not more authoritative than those enacted by the legislature.

*Realty Group, Inc. v. Department of Rev.*, 299 Or. 377, 383-84, 702 P.2d 1075 (1985). *See also Penn Mut. Life Ins. Co. v. Hunt*, 237 Mass. 241, 243-44, 129 N.E. 391 (1921).

Given the comprehensive nature of RCW 70.77, it seems to me to be uncontestable that the Legislature has chosen to preempt the field of regulation of fireworks displays and has abrogated the application of the common law. Not only is the comprehensive nature of the statute important, the statutory liability imposed by RCW 70.77.285 also seems to me to be decisive in determining the Legislature has in all respects abrogated the common law in dealing with fireworks displays.

Thus, while I agree with the result reached by the majority, I would confine the opinion to that which is contained in part II in its opinion.

SMITH, J., and CALLOW, J. Pro Tem., concur with DOLLIVER, J.