[No. 44-40278-2.   Division Two.   February 27, 1970.]

WAYNE C. HARRIS et al., Respondents, v. ARNOLD TURNER et al., Appellants.

*Murray, Scott, McGavick & Graves* and *James R. Lowry,* for appellants Turner.

*Hammermaster & Robbins* and *Charles E. Robbins,* for appellants Possenti.

*Jacobs, Steiner & Smith* and *Edmund F. Jacobs,* for respondents.

ARMSTRONG, C. J.—The plaintiffs, Mr. and Mrs. Wayne C. Harris, brought this action to recover damages for bodily injuries to Wayne C. Harris and for property damage resulting from a collision of his lightweight Honda motorcycle with a dog owned by the defendants Possenti. At the time of the accident defendants Possenti and their German shepherd dog, King, were living on property owned by the defendants Turner.

Defendants Turner and Possenti appeal from a jury verdict of $27,500 which was awarded against each of the marital communities. The trial court directed a verdict against defendants Possenti on liability and submitted the sole issue of damages to the jury. The trial court submitted the issue of liability and damages of defendants Turner to the jury, but withdrew the issues of contributory negligence and proximate cause, and, in effect, limited the argument of defendants Turner to the issues of harboring and control of the dog and damages.

On October 16, 1966, plaintiff Wayne C. Harris was riding his motorcycle in a northerly direction on Angeline Road which is an arterial in a rural area of Pierce County. His motorcycle was to the right and slightly behind his brother's motorcycle. Plaintiff was riding closer to the shoulder of the road. Plaintiff's brother, Richard Harris, first saw the dog run towards the road from the direction of the Turner driveway on the east side of the roadway. The testimony is not entirely clear whether the dog was running alongside the roadway or ran directly onto the roadway and towards the motorcycles. There are statements which could support either theory. Richard Harris swerved to his left to keep from hitting the dog. Just as Richard Harris got back on his proper side of the road he glanced back and saw his brother

lying on the ground. The plaintiff's motorcycle had struck the dog broadside behind its left shoulder, killing the dog.

Plaintiff was thrown from the motorcycle receiving serious face and head injuries.

After the accident, Charles, the 17-year-old son of defendants Possenti, came out to the scene and claimed his dog. The dog had been owned by the family since Charles was 6 years old.

The defendants Turner resided in their old home which was approximately one-eighth of a mile east of the Angeline Road. South of the driveway to their home was the house in which the defendants Possenti lived. The defendants Turner were constructing a new home some 30 yards east of Angeline Road and north of the scene of the accident. Defendants Turner owned all of the property in question. They maintained their family and their own two dogs at their old home. Defendants Possenti maintained their family and their dog, King, at their home.

On the day in question defendants Possenti had gone shopping and left their 17-year-old son, Charles, at home. Charles last saw the dog under a tree by the Possenti house, where it usually stayed. At the time of the accident the son was playing football with the Turner boys.

Testimony was conflicting as to whether the dog was in the habit of running in the path of or chasing motorcycles. There was testimony that, on a number of occasions, over a period of years, King had done both. There was also testimony to the contrary. There was no testimony that any of the defendants had observed King running at or chasing motorcycles, nor that they had been told of such conduct. The defendants testified that he was a good, well-behaved dog and they had never seen him bother motorcycles, automobiles or people.

The defendants Turner testified that they did not exercise possessory rights and never assumed care, custody and control of the dog King. Defendants Possenti corroborated this testimony. There was no leash law in Pierce County in the area in question.

Defendants make five assignments of error raising two principal issues. The first issue is based on defendants' contention that plaintiffs' evidence was insufficient to submit the case to the jury against defendants Turner. The issue is created by the trial court's application of the Pierce County Code, chapter 7.08, which sets forth the local animal control law. The pertinent portions are set forth below:

7.08.010 Definitions.

(a) "Dog" shall include female, spayed female and male dogs.

(b) "Owner" shall mean any person, firm or corporation owning, having interest in or having control or custody or possession of any animal.

(c) "At large" shall mean off the premises of the animal's owner or keeper, and not under restraint by leash or chain or not otherwise controlled by a competent person.

. . .

(Res. 6646 § 1; as amended by Res. 6658; passed November 18, 1957)

. . .

7.08.070 Harboring vicious or dangerous dogs. It shall be unlawful for any owner to keep, harbor, or maintain on or off his premises in a manner liable to endanger [sic] the safety of persons or property lawfully upon said premises, or upon any street, avenue, public or private place, or to allow to run at large within the unincorporated area of Pierce County, any vicious, menacing or dangerous dog or a dog with vicious propensities. . . .
. . . (Res. 6646 § 7, as amended by Res. 6658; passed November 18, 1957)

. . .

7.08.100 Dogs chasing vehicles on public streets. It shall be unlawful for any owner keeping or harboring any dog to suffer or permit such dog to chase, run after or jump at vehicles lawfully using the public streets, avenues, alleys and ways . . . (Res. 6646 § 10, as amended by Res. 6658; passed November 18, 1957)

Section 7.08.070 is obviously a codification of the common law recently explained in *Johnston v. Ohls*, 76 Wn.2d 398, 400, 457 P.2d 194 (1969), which states:

> Common law liability for injuries caused by vicious or dangerous dogs is based upon a form of strict liability. One who keeps a dog, who knows or reasonably should know that the dog has vicious or dangerous propensities likely to cause the injury complained of, has a duty to kill the animal or confine it. Any injury caused by such an animal subjects the owner to prima facie liability without proof of negligence.

(Footnote omitted.)

Our next consideration is whether section 7.08.100 of the code is also a codification of common law liability relating to keeping a dangerous dog and therefore requires a knowledge of the dog's vicious propensities. Plaintiffs contend and the trial court ruled, that it is not necessary to prove constructive or actual knowledge of the vicious propensities of a dog under section 7.08.100 of the code. In support of the trial court's rulings and instructions, the plaintiffs argue it is sufficient to prove only that the owner allowed the dog to run free and that it chased vehicles on the public road. They argue that it is not necessary to prove the owner's knowledge of the dog's propensity to chase vehicles. We do not agree.

Section 7.08.100 requires (1) that one be proved to be an owner within the definition set forth in the code; (2) that he must be keeping or harboring a dog; and (3) that he must *suffer and permit* the dog to chase, run or jump at vehicles using the public streets.

In *Willis v. Gerking,* 109 Wash. 382, 186 P. 1064 (1920), our Supreme Court held that the word "suffer" means "permit" and permit requires consent or knowledge. This is consistent with decisions dating back to the early leading case of *Gregory v. United States,* 10 F. Cas. 1195, 1198 (No. 5803) (C.C.S.D. N.Y. 1879), wherein the court stated that "[e]very definition of 'suffer' and 'permit' includes knowledge of what is to be done under the sufferance and permission, . . . ". We conclude that in order for the owner of a dog to suffer or permit the dog to do something, he must have actual or constructive knowledge of the dangerous propensities of the dog in question.

Sections 7.08.070 and 7.08.100 are both forms of the strict liability imposed upon owners of dogs with dangerous or vicious tendencies by the common law. *See Johnston v. Ohls, supra.* Section 7.08.100 refers to a particular type of dangerousness, to wit, chasing vehicles. Each section is based upon scienter which requires a showing that defendants knew or should have known of the dog's vicious or dangerous tendencies. The court's failure to instruct the jury on the necessity of proving such knowledge constituted prejudicial error as to both defendants.

There remains another aspect to the contention of defendants Turner that the evidence was insufficient to submit to the jury. This concerns the question of whether there was substantial evidence to show that defendants Turner were owners of the dog, King, within the terms of section 7.08.010(b) of the code in order to determine whether they kept or harbored a dog which they knew or should have known had a propensity to chase motorcycles in violation of section 7.08.100.

Plaintiffs argue that ownership of the property alone places defendants Turner in such a position of control that they should have restrained the dog so that it would not run at large. We do not agree. The Possentis and the Turners maintained separate households. Ownership of the home in which the Possentis resided, in and of itself, does not make the defendants Turner owners, harboring or keeping a dangerous dog.

Plaintiffs argue additionally, however, that defendant Mrs. Turner made two admissions which established that the Turners were the owners, as defined in the code, by taking care of or having custody of the dog King.

In the investigation of the case a member of plaintiffs' law firm, Frederick P. Smith, telephoned defendant Mrs. Turner. Mr. Smith testified that Mrs. Turner told him the dog was owned by her sister and brother-in-law, Mr. and Mrs. Possenti, who occupied property adjacent to the Turner home. He asked her who was taking care of the dog on the day in question and her response was that the Pos-

sentis had gone to town to shop and the Turners were taking care of the dog. Attorney Smith testified from notes taken at that time to refresh his recollection of the substance of the conversation with Mrs. Turner. He did not have a verbatim record of the questions and answers.

Mrs. Turner disclaimed making the statement that they were caring for the dog. Plaintiffs' attorney then asked permission to recall Mrs. Harris for the purpose of impeachment. Over objections Mrs. Harris testified on rebuttal that she called on Mrs. Turner, and, in effect, Mrs. Turner told her that "she felt responsible" for the dog at the time because her sister and brother-in-law were on a shopping trip and the dog was on their property. We consider such a statement an expression of empathy and not necessarily an admission of liability.

■ Our Supreme Court has repeatedly held that evidence of verbal admissions of an adverse party, where there are no corroborating facts or circumstances, is not sufficient to sustain a verdict of a jury upon a vital issue. *LaMoreaux v. Fosket,* 45 Wn.2d 249, 273 P.2d 795 (1954).

We shall first consider whether the controverted alleged statements of Mrs. Turner would subject defendants Turner to liability if they were true. It would be necessary to find them (1) owners ("any person . . . having interest in or having control or custody or possession of [the] dog"); (2) harboring or keeping the dog; and (3) having constructive or actual knowledge of the dog's propensities to chase, run after, or jump at vehicles.

■ In *Miller v. Reeves,* 101 Wash. 642, 172 P. 815 (1918), the court held that a person harboring a vicious animal, knowing of its vicious propensity, although not its owner, is liable in damages for injuries. In that case the defendants took in a stray dog and at times kept it tied on their premises, returned it to the premises when it left, left the dog in care of one of their employees when they were gone for a short time and otherwise cared for the dog. The court stated the rule at 645:

> "A man may own an animal and yet not be its keeper. The word 'keeper' is equivalent to 'the person who harbors.' Harboring means protecting, and one who treats a dog as living at his house, and undertakes to control his actions, is the owner or keeper within the meaning of the law."

We agree with this statement of the law. The court also quoted from an old English case, *M'Kone v. Wood,* 172 Eng. Rep. 850 (1831), which held that "the harbouring a dog about one's premises, or allowing him to be or resort there, is a sufficient keeping of the dog . . . ". We consider the reference to allowing a dog to resort on one's premises to be obiter dictum and not sufficient reason to find that one is a harborer or keeper of a dog. The trial court erred in instructing the jury that the word "harbor" or "harboring" could consist of "allowing the dog to resort about one's premises, . . . ".

The general rule expressed in *Miller v. Reeves, supra,* is entirely consistent with the rule set forth in Restatement of Torts § 514, comment *a* at 30, 31 (1938), which we adopt as a correct statement of the law.

> [A] person harbors a dog . . . by permitting his wife, son or household servant to keep it in the house or on part of his land which is occupied by the family as a group. On the other hand, the possession of the land on which the animal is kept, even when coupled with permission given to the third person to keep it thereon, is not enough to make its possessor liable as a harborer of the animal. Thus, a father, on whose land his son lives in a separate residence, does not harbor a dog kept by his son therein, although he has the power to prohibit the dog from being kept and fails to exercise the power or even if he presents the dog to his son to be so kept.

Bearing in mind that verbal admissions of a party must be received with great care and caution and subjected to careful scrutiny (*LaMoreaux v. Fosket, supra*), we have searched the evidence to ascertain whether there were corroborating facts and circumstances sufficient to support the alleged verbal declarations of Mrs. Turner. The Possentis

were in town shopping as the alleged declaration states. The dog had been on the Turners' property on numerous occasions and some people considered it to be the Turners' dog. This is offset in some measure by the undisputed evidence of the fact that 17-year-old Charles Possenti was left at home with the dog and last saw the dog lying in his customary resting place under a tree in the Possenti yard.

We conclude that even though the verbal declarations of Mrs. Turner are accepted as true, the facts presented a mere scintilla of evidence that the Turners were owners (as defined in the code), "harboring" or "keeping" the dog King, within the meaning of those terms. Accordingly, the trial court should have granted the Turners' motion to dismiss.

■ The second principal issue concerns defendants' contention that there was substantial evidence to support contributory negligence and that the question should have been submitted to the jury. This is contended both as to plaintiff's driving and his lack of safety appliances. We do not agree with this contention. We have determined that this action is based upon scienter and in accordance with the ruling of *Johnston v. Ohls, supra,* that contributory negligence is not an available defense.

To this rule there is an exception concerning antagonizing or provoking a dog which is clearly not applicable to this case.

The rule of *Johnston v. Ohls* denying the defense of contributory negligence finds further support in Restatement of Torts § 515 at 31, 32 (1938).

(1) A plaintiff is not barred from recovery by his failure to exercise reasonable care to observe the propinquity of a wild animal or an abnormally dangerous domestic animal or to avoid harm to his person, land or chattels threatened by it.

Comment *a* at 32 further states:

The possessor or harborer of the animal takes the risk of answering for any harm done by it while out of his control not only to the careful and competent but also to

those whose care and competence is below the standard to be expected of the reasonable man. Therefore, a person harmed by such an animal which with or without fault of the owner gets out of his control is not barred from recovery because had he exercised ordinary vigilance, skill and competence he could have escaped injury.

In adopting this statement we feel that it is sufficiently broad to cover both aspects of defendants' contributory negligence contention—plaintiff's driving and his failure to use safety appliances. Thus this defense is not available to the remaining defendants Possenti. Defendants' proposed instruction supporting this defense was properly excluded by the trial court.

Defendants' other contentions are related to and included in the two principal issues discussed above. On the basis of our disposition of these issues we feel that a new trial should be granted the defendants Possenti with the jury instructed on issues relating to liability consonant with this decision.

The judgment of the trial court is reversed, the action against defendants Turner dismissed, and a new trial granted to defendants Possenti.

PEARSON and PETRIE, JJ., concur.