[No. 8294-6-III. Division Three. March 8, 1988.]

KATHERINE BEELER, *as Guardian, Appellant,* v. DALLAS D. HICKMAN, ET AL, *Respondents.*

*Terrence P. Abeyta* and *Abeyta & Nelson, P.S.,* for appellant.

*Blaine Gibson* and *McArdle, Dohn, Talbott & Simpson,* for respondents.

MUNSON, J.—Katherine Beeler, as guardian ad litem for Jason Beeler, appeals the trial court's summary judgment dismissing her action against Dallas and Mildred Hickman for injuries inflicted by their dog on Jason. Mrs. Beeler contends the court erred in finding: (1) the Hickmans were not the owners of the dog under RCW 16.08.040; (2) no evidence the Hickmans knew or had reason to know of the dog's vicious propensities; (3) no evidence of Mrs. Hickman's negligence. We reverse the summary judgment in part and remand for a determination as to whether the Hickmans own the dog.

We review the facts in the light most favorable to Mrs. Beeler. On July 4, 1985, Katherine Beeler, her husband Ron, and their children, Jason, age 2, and Melissa, age 1, visited their neighbors, Dallas and Mildred Hickman, across the street. While they were talking in the driveway, Tye, a beagle residing with the Hickmans, walked over and sat next to Mrs. Hickman who was standing at the end of the driveway. Jason walked toward Tye in a crouched position, rubbing his hands together and talking in a "high little voice." Tye lunged and bit Jason in the face causing severe injuries. Mrs. Beeler brought an action against the Hickmans claiming they were strictly liable under RCW 16.08.040 for Jason's injuries. She subsequently amended her complaint to include Janis Layman, the alleged owner of the dog, and her husband as defendants, and additionally alleged the Hickmans were negligent.

The depositions of Mrs. Hickman, Mrs. Beeler, and Mrs. Layman revealed the following facts: Mrs. Layman is the granddaughter of Mrs. Hickman. She began living with the Hickmans at age 14 in December 1978. In approximately April 1979, she purchased a beagle puppy with money she had received from her father. Mrs. Layman and the dog continued to live with the Hickmans until April 1982. Then she moved to California without the dog. In California, she lived in two different apartments for approximately 6 months each. The first apartment did not allow pets; the second apartment allowed pets, but Mrs. Layman did not have her dog transported because the apartment did not have a yard. During the year in California, she did not visit the Hickmans.

In April 1983, Mrs. Layman married and moved to Seattle. She and her husband lived in five different places in the Seattle area during the next 3 years. In three of the places, pets were allowed. Mrs. Layman stated she did not have her dog sent to Seattle because none of the places had a fenced yard, and she felt putting the dog on a chain would be cruel. In a sworn statement she stated that if she

ever moved to a place where she could keep a dog, she would arrange to get Tye.

Since moving to Seattle in April 1983, Mrs. Layman visited the Hickmans and her dog in Yakima every 4 to 5 weeks. On almost every visit she gave some money to Mrs. Hickman to buy dog food. She does not remember the dog having any problems with young boys or neighbors, but stated she and Mrs. Hickman would repeatedly warn Jason not to play with the dog. Mrs. Layman stated she saw Jason antagonize the dog on one occasion by placing his hands near his face and growling. She warned Jason not to do this. She also saw Jason hit the dog with his hand on two or three occasions and on one occasion heard the dog growl at Jason. She was not aware of any occasion when the dog bit someone. She stated she had heard the dog had been kicked a few times by a man in the neighborhood and that the dog did not like men in general.

Mrs. Hickman stated in her deposition that she never felt she owned the dog, but bought dog food on occasion. She stated that when the dog was a puppy he had been teased by a child; she told Jason on numerous occasions not to play with or tease the dog because she was afraid the dog would not like it. She told Mr. and Mrs. Beeler the dog did not like children. She stated the dog had never bitten anyone before, and she was never concerned until the dog bit Jason.

Mrs. Beeler stated in her deposition she was told the dog did not like young boys, but she was not at all concerned for Jason's safety around the dog. She explained that immediately before the bite, she saw Jason rubbing his palms together and talking in a "high little voice." A split second later the dog bit him.

In a sworn statement in support of the motion for summary judgment, Mr. Beeler contended that Mr. and Mrs. Hickman both said their granddaughter originally owned the dog, but they had kept him so long they now claimed him as their own. Mr. Beeler also contended Mrs. Hickman told him that because the dog did not like children, she

always attempted to keep him under control when children were present and had considered getting rid of him. Mr. Beeler added that shortly after they returned from the hospital following the bite, Mrs. Hickman came over and told him she was going to tell Jason to back away from the dog, but did not do so because she did not want Mr. Beeler to think she was always nagging about the dog not liking little boys. Mr. and Mrs. Hickman denied making any of these statements.

In an oral ruling the court granted the Hickmans' motion for summary judgment finding they were not liable under RCW 16.08.040 because Mrs. Layman purchased the dog, never relinquished ownership, and therefore still owned the dog. The court also found the Hickmans were not liable under common law strict liability or negligence because there was no evidence the dog was vicious or the Hickmans had any knowledge or reason to know of any vicious tendency. Mrs. Beeler appeals.

The first issue is whether the trial court erred in holding the Hickmans were not strictly liable under RCW 16.08-.040. When reviewing a motion for summary judgment, this court must engage in the same inquiry as the trial court: the motion can be granted only if the pleadings, affidavits, depositions, and admissions on file demonstrate there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. *Wilson v. Steinbach,* 98 Wn.2d 434, 437, 656 P.2d 1030 (1982); CR 56(c). This court must consider all the facts and reasonable inferences in the light most favorable to the nonmoving party; the motion should be granted only if reasonable persons could reach but one conclusion. *Wilson,* at 437.

RCW 16.08.040 provides:

> The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former

viciousness of such dog or the owner's knowledge of such viciousness.

RCW 16.08.050 provides in part:[1]

A person is lawfully upon the private property of such owner within the meaning of RCW 16.08.040 when such person is upon the property of the owner with the express or implied consent of the owner . . .

Both parties agree RCW 16.08.040 limits liability to the "owner" of the dog.

When construing a statute, the goal is to carry out the intent of the Legislature. *Seven Gables Corp. v. MGM/UA Entertainment Co.,* 106 Wn.2d 1, 6, 721 P.2d 1 (1986). The court's interpretation must make the statute purposeful and effective. *Seven Gables,* at 6. If a statute does not define a word, it must be given its plain and ordinary meaning unless a contrary intent appears. *Dennis v. Department of Labor & Indus.,* 109 Wn.2d 467, 479–80, 745 P.2d 1295 (1987).

RCW 16.08.040 is in derogation of the common law and must be strictly construed. *McNeal v. Allen,* 95 Wn.2d 265, 269, 621 P.2d 1285 (1980). At common law, an owner, keeper, or harborer of a dog, who knows or reasonably should know the dog has vicious or dangerous propensities likely to cause the injury complained of, is liable for such injury regardless of any negligence. *Johnston v. Ohls,* 76 Wn.2d 398, 400, 457 P.2d 194 (1969); *Markwood v. McBroom,* 110 Wash. 208, 211, 188 P. 521 (1920); *Miller v. Reeves,* 101 Wash. 642, 644–45, 172 P. 815 (1918). RCW 16.08.040 imposes liability only on the "owner" of a dog, does not require knowledge of any vicious or dangerous

---

[1]Prior to 1979, a person was protected by RCW 16.08.040 only if he or she was on private property of the dog owner in the performance of any duty imposed by state or federal law or municipal ordinance. *See* Laws of 1979, ch. 148, § 1, p. 672. The courts in *Dominick v. Christensen,* 87 Wn.2d 25, 548 P.2d 541 (1976) and *Reis v. Becker,* 3 Wn. App. 199, 473 P.2d 856, *review granted,* 78 Wn.2d 991 (1970), *review dismissed,* 79 Wn.2d 1001 (1971) held social guests did not come within this statute. In 1979 the Legislature amended RCW 16.08.050 to include persons "on 'the property of the owner' with the owner's 'express or implied consent'." *See Hansen v. Sipe,* 34 Wn. App. 888, 889 n.1, 664 P.2d 1295 (1983).

propensities, and thus is in derogation of the common law. The use of the term "owner" evidences a legislative intent to exclude from liability persons who are mere keepers or possessors of a dog. *See Mascola v. Mascola*, 168 N.J. Super. 122, 401 A.2d 1114 (1979). Thus, the question is whether the Hickmans are mere keepers or possessors or whether they should be considered owners of the dog.[2]

The only case to address the meaning of the term "owner" in RCW 16.08.040 is *Shafer v. Beyers*, 26 Wn. App. 442, 446, 613 P.2d 554, *review denied*, 94 Wn.2d 1018 (1980) which held that a property owner was not liable for a dog owned by a person subletting an apartment on the property.

Although the Legislature failed to define the term "owner" in RCW 16.08.040, it could not have intended to limit the term to the purchaser of a dog who still claims ownership, or to exclude a person who resides with and cares for the dog for an extended period of time. This would, in effect, allow a person to disclaim ownership if he

[2]Mrs. Beeler cites several Washington cases in support of her position the owner of a dog need not be the person who purchased or has title to the dog. *Markwood v. McBroom, supra; Miller v. Reeves, supra; Harris v. Turner*, 1 Wn. App. 1023, 466 P.2d 202, *review denied*, 78 Wn.2d 993 (1970). These cases, however, merely applied the common law rule that liability attaches to an owner, keeper, or harborer of a dog. The court in *Miller*, at 645, carefully pointed out a person may own a dog and yet not be its keeper or harborer. Thus, contrary to Mrs. Beeler's contention, these cases do not hold that a person who keeps or harbors a dog is considered the owner of the dog.

In *Harris*, a running dog collided with a moving motorcycle. The injured passenger received a jury verdict against the dog owners and the owners of the property on which the dog owners lived. A Pierce County code provision defined "owner" as "any person, firm or corporation owning, having interest in or having control or custody or possession of any animal." A subsequent provision provided that it was unlawful for any owner to "keep, harbor, or maintain" a vicious dog. The court held the ownership of a house in which the dog owners resided did not make the property owners the owners, harborers, or keepers of the dog. *Harris*, at 1028.

or she does not actually purchase the dog, thereby frustrating the apparent legislative purpose of making a person answerable for damages a dog in their possession causes. A new statute took effect on July 26, 1987, but applies to "dangerous dogs" and is not applicable to this case. RCW 16.08.070.

The Hickmans contend there was no genuine issue of material fact as to ownership because it was undisputed Mrs. Layman purchased the dog, never relinquished ownership, intended to get possession of him in the future, and the Hickmans denied ownership. However, the fact the Hickmans resided with, cared for, and had exclusive possession of the dog for 3 years raises a genuine issue of material fact for the jury to decide. Furthermore, since these allegations are particularly within the knowledge of the Hickmans and Mrs. Layman, summary judgment is not proper. *Michigan Nat'l Bank v. Olson,* 44 Wn. App. 898, 905, 723 P.2d 438, *review denied,* 106 Wn.2d 1011 (1986).

The Hickmans argue that Mr. Beeler's sworn statement that they claimed the dog as their own does not give rise to a genuine issue of material fact because verbal admissions of an adverse party are not sufficient to sustain a verdict where there are no corroborating facts or circumstances. *Harris v. Turner,* 1 Wn. App. 1023, 1029, 466 P.2d 202, *review denied,* 78 Wn.2d 993 (1970). Here, however, there were corroborating facts and circumstances that the Hickmans owned the dog.

The next issue is whether the court erred in dismissing Mrs. Beeler's claim for common law strict liability. We do not address this issue because Mrs. Beeler did not plead this particular theory. The common law recognized two separate causes of action for injuries caused by animals. *Arnold v. Laird,* 94 Wn.2d 867, 871, 621 P.2d 138 (1980). First, if a dog owner knows the dog has vicious or dangerous propensities, the owner is strictly liable for any injuries

the dog causes. *Arnold,* at 871; *Johnston,* at 400; *Mark-wood,* at 211. Second, if a dog owner does not know of any vicious or dangerous propensities, the owner is liable only if negligent in failing to prevent the harm. *Arnold,* at 871; *see* Restatement (Second) of Torts §§ 509, 518 (1977). In her amended complaint, Mrs. Beeler pleaded statutory strict liability under RCW 16.08.040 and negligence. Even if the evidence and argument of counsel were deemed to amend the pleadings to include common law strict liability, we would affirm the dismissal of this cause of action because there is not sufficient evidence the Hickmans knew or reasonably should have known of any vicious or dangerous propensities.

The last issue is whether the court erred in determining there was insufficient evidence Mrs. Hickman was negligent. The amount of care required is commensurate with the character of the animal: "The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen." *Arnold,* at 871; *see also* Restatement (Second) of Torts § 518 (1977).

Mrs. Beeler contends there was sufficient evidence of negligence because Mrs. Hickman, knowing of the dog's propensity to react, should have restrained the dog or warned Jason not to antagonize him. As explained previously, Mrs. Hickman had no reason to know the dog would bite Jason. She did state in her deposition that any dog would react if provoked. However, there was no reason for her to believe this dog would bite Jason. In fact, Mrs. Layman testified Jason had previously placed his hands by his face while growling at the dog and had even struck the dog with his hand with no response from the dog. Furthermore, the bite happened suddenly; Mrs. Beeler testified it happened in a "split second." Finally, Mrs. Hickman's subsequent statement that she should have warned Jason does not suggest she believed the dog would bite Jason.

The judgment is reversed in part, affirmed in part, and remanded for trial on the issue raised under RCW 16.08-.040.

McINTURFF, C.J., and THOMPSON, J., concur.

Reconsideration denied March 29, 1988.