233 P.3d 914 (2010)
Mary SLIGAR, an individual, Appellant,
v.
Kara A. ODELL and "John Doe" Odell, wife and husband, and the marital community composed thereof, Respondents.
No. 64916-7-I.
Court of Appeals of Washington, Division 1.
July 6, 2010.
*916 Mark W. Watson, The Law Offices of Watson & Gallagher, P.S., Tacoma, WA, for Appellant.
Eric S. Newman, McDermott Newman, PLLC, Seattle, WA, for Respondents.
COX, J.
¶ 1 The owner of a dog that bites someone who is "lawfully" on the property of the dog owner is strictly liable for damages caused by the bite.[1] Someone is "lawfully" on the dog owner's property when he or she is on "the property of the owner with the express or implied consent of the owner."[2] But such consent "shall not be presumed when the property of the owner is fenced or reasonably posted."[3]
¶ 2 Here, Kara and David Odell's property was separated from Mary Sligar's property by a six-foot-high chain link fence at the time their dog bit Sligar's finger. Sligar's finger was protruding through the chain link fence enclosing the dog at the time of her unfortunate injury. Because Sligar fails to show the existence of any genuine issue of material fact for either her statutory strict liability claim or her common law negligence claim, we affirm summary judgment in favor of the Odells.
¶ 3 The material facts are largely undisputed. Sligar and the Odells are next-door neighbors. Their respective residences have a six-foot-high chain link fence between them. At the time of this incident, the Odells owned two dogs, Chico, a chocolate Labrador retriever, and Molly, a golden retriever. Sligar owned three miniature schnauzers, one of which was named Pearl. The dogs could see each other through the chain link fence and often barked at each other.
¶ 4 On the date of her injury, Sligar tripped and fell while she was trying to move Pearl away from the fence. According to Sligar's deposition testimony: "I was trying to catch Pearl, and I stumbled and lost my balance and fell onto the fence. My hand went on the fence, my finger went through the fence, and Chico bit it."[4]
¶ 5 Sligar sued the Odells for damages for the dog bite. Her complaint alleged strict liability under RCW 16.08.040 and common law negligence. Following discovery, the Odells moved for summary judgment. The trial court granted their motion and denied Sligar's motion for reconsideration.
¶ 6 Sligar appeals.

DOG BITE LIABILITY
¶ 7 Sligar first argues that the trial court erred by granting summary judgment to the Odells on her strict liability claim under *917 RCW 16.08.040. We hold that the court properly dismissed this claim on summary judgment.
¶ 8 A defendant may move for summary judgment by showing that there is an absence of evidence to support the plaintiff's case.[5]
In a summary judgment motion, the moving party bears the initial burden of showing the absence of an issue of material fact. If the moving party is a defendant and meets this initial showing, then the inquiry shifts to the party with the burden of proof at trial, the plaintiff. If, at this point, the plaintiff "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial", then the trial court should grant the motion.[6]
"In such a situation, there can be `no genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial."[7]
¶ 9 In making this responsive showing, the nonmoving plaintiff cannot rely on the allegations made in the pleadings.[8] Rather, the responding party is required to set forth specific facts "by affidavits or as otherwise provided in [CR 56(e) ]," showing that there is a genuine issue for trial.[9] "At that point, the evidence and all reasonable inferences therefrom is considered in the light most favorable to the plaintiff, the nonmoving party. An appellate court reviewing a summary judgment places itself in the position of the trial court and considers the facts in a light most favorable to the nonmoving party."[10]
¶ 10 The Odells moved for summary judgment based largely on the deposition testimony of Sligar. Thus, the issue is whether Sligar, the nonmoving party, made a showing that there was any genuine issue of material fact regarding whether the Odells were strictly liable for her dog bite injuries under RCW 16.08.040.
¶ 11 That statute states:
The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.[11]
¶ 12 RCW 16.08.050 defines when entrance on private property is lawful for purposes of the above statute:
A person is lawfully upon the private property of such owner within the meaning of RCW 16.08.040 when such person is upon the property of the owner with the express or implied consent of the owner: PROVIDED, That said consent shall not be presumed when the property of the owner is fenced or reasonably posted.
¶ 13 This "`court's fundamental objective in construing a statute is to ascertain and carry out the legislature's intent.'"[12] "Statutory interpretation begins with the statute's plain meaning. Plain meaning `is to be discerned from the ordinary meaning of the language at issue, the context of the statute in which that provision is found, related provisions, and the statutory scheme as a whole.'"[13] To determine the plain meaning *918 of a word not defined by the state, this court may look to its dictionary definition.[14] "If the statute is unambiguous after a review of the plain meaning, the court's inquiry is at an end."[15]
¶ 14 "RCW 16.08.040 is in derogation of the common law and must be strictly construed."[16] At common law, a dog owner, who knows or reasonably should know of the dog's vicious or dangerous propensities likely to cause the injury complained of, is liable for injury caused by the dog, regardless of any negligence of the owner.[17] But subject to the provisions of RCW 16.08.040, liability for injury arises for the owner of a dog regardless of whether the owner knows or reasonably should know of the dogs vicious or dangerous propensities.[18]
¶ 15 Here, the dispositive question is whether, pursuant to RCW 16.08.040 and.050, Sligar's finger was "lawfully in or on... the property of the" Odells at the time of the dog bite. As we explained earlier, RCW 16.08.050 defines when entry on the private property of a dog owner is lawful for the purpose of liability.
¶ 16 Based on excerpts from the deposition testimony of Sligar, the Odells argued that her testimony demonstrated that she was not lawfully on their property at the time of the dog bite because they had not given her their express consent to be there. They also argued that their consent to her entry onto their property should not be presumed under RCW 16.08.050 because the property was fenced.
¶ 17 In response, Sligar argued that she had the Odells' implied consent to have her finger on their side of the chain link fence. She also claimed that they failed to prove she was a trespasser when she fell and her finger accidentally protruded through the fence. Neither of these arguments shows the existence of a genuine issue of material fact for trial.
¶ 18 The terms "implied consent" and "presumed" are not defined by the dog bite statute. "`When a statutory term is undefined, the words of a statute are given their ordinary meaning, and the court may look to a dictionary for such meaning.'"[19] Black's Law Dictionary defines "implied consent" as "[c]onsent inferred from one's conduct rather than from one's direct expression."[20] Case law is consistent with this view that implied consent may be communicated based on "conduct, omission, or by means of local custom."[21] A "presumption," on the other hand, is defined as "[a] legal inference or assumption that a fact exists, based on the known or proven existence of some other fact or group of facts."[22]
¶ 19 At best, Sligar's arguments in response to the Odells' summary judgment motion attempt to show that she had their implied consent to be on their property at the time of her injury. She first claims that she had previously reached through the fence to pet Molly. She next claims she had attached chicken wire to her side of the fence which required placing her fingers through the fence to twist wire ties around the chain links. Lastly, she claims to have previously leaned on the fence while talking to the Odells. These assertions fail to show the existence of any genuine issue of material fact.
*919 ¶ 20 The proviso of RCW 16.08.050 plainly states that the consent of the owner "shall not be presumed when the property of the owner is fenced or reasonably posted." Here, a six foot fence separated the Odells' property from Sligar's property, containing Chico on the Odells' side of the fence. Thus, the statute mandates that there shall not be any presumptionno legal inferenceof the Odells' consent to Sligar being on their property at the time of her injury. In short, she fails to show she was lawfully on their property at the time of her injury. Under such circumstances, there is no strict liability under the statute.
¶ 21 Sligar does not argue that she had the express consent of the Odells to be on their property. This is the only alternative that RCW 16.08.050 states would permit a determination that Sligar's presence on the Odells' property was lawful at the time of her injury. Nothing in this record would support such an argument had it been made.
¶ 22 Sligar also argues that she was a licensee and not a trespasser at the time of the dog bite.[23] We conclude that these characterizations of her alleged status at the time of her injury do nothing to change our conclusion that the Odells are not liable under the dog bite statute.
¶ 23 First, as Sligar correctly argues in her brief, a licensee is entitled to enter another's land by virtue of the landowner's consent.[24] But, as we have already explained, there is no express consent here. Moreover, the dog bite statute bars any legal inference of implied consent where the property is fenced. Here, Chico and Sligar's finger were on the Odells' side of the fence when the bite occurred. Thus, characterizing Sligar as a licensee does nothing to advance her claim under the dog bite statute.
¶ 24 Second, the attempt to avoid characterizing herself as a trespasser is irrelevant under the dog bite statute. The plain words of the statute focus on express or implied consent of the owner of the dog to determine whether one is legally on the dog owner's property. The word trespasser is not found in the statute. Sligar fails to persuade us why we should introduce into our analysis a word that the legislature did not use in expressing its intent on this subject. We decline to do so.
¶ 25 Finally, Sligar also argues that the evidence is insufficient to prove that she was on the Odells' property at the time of the dog bite. She appears to support this argument with the fact that neither party provided evidence of the boundary line location or whether the fence was located exactly on the boundary line. But, as explained above, because the Odells moved for summary judgment, Sligar had the burden of proving that she was "lawfully in or on a private place" when the dog bite occurred.[25] And the nonmoving party may not rely on speculation or "mere allegations, denials, opinions, or conclusory statements" to establish a genuine issue of material fact.[26] In the absence of evidence proving that Sligar was "lawfully in or on a private place," the trial court did not err in granting summary judgment for the Odells.
¶ 26 In sum, Sligar failed in her burden to show the existence of any genuine issue of material fact on her statutory strict liability claim. The Odells were entitled to a judgment as a matter of law dismissing this statutory strict liability claim.

COMMON LAW CLAIM
¶ 27 Sligar next argues that the trial court improperly dismissed her common law negligence claim. She is wrong.
¶ 28 The common law recognizes two separate causes of action for injuries by animals.[27] "First, if a dog owner knows the dog *920 has vicious or dangerous propensities, the owner is strictly liable for any injuries the dog causes. Second, if a dog owner does not know of any vicious or dangerous propensities, the owner is liable only if negligent in failing to prevent the harm."[28]

Common Law Negligence
¶ 29 To establish negligence, Sligar must prove (1) the existence of a duty, (2) breach of that duty, (3) injury, and (4) proximate cause between the breach and the injury.[29] If the plaintiff fails to present evidence to prove each essential element of the negligence claim, then summary judgment for the defendant is proper.[30]
¶ 30 In a dog bite case, "a negligence cause of action arises when there is ineffective control of an animal in a situation where it would reasonably be expected that injury could occur, and injury does proximately result from the negligence."[31] "The amount of care required is commensurate with the character of the animal: `The amount of control required is that which would be exercised by a reasonable person based upon the total situation at the time, including the past behavior of the animal and the injuries that could have been reasonably foreseen.'"[32]
¶ 31 Sligar contends that the Odells were negligent in failing to protect her from harm because they failed to erect a solid fence on the property boundary until after the bite occurred and they failed to tie up or otherwise restrain Chico in their yard. Both theories suffer from the same problem: failure, under the circumstances of this case, to show any breach of a duty by the Odells.
¶ 32 As our supreme court has stated, "it is not per se unreasonable to keep a dog in a fenced backyard if the animal has not exhibited dangerous tendencies."[33] Here, Sligar did not produce any evidence to demonstrate that the Odells either knew or should have known that their dog had any dangerous propensities. And the dog was in a fenced backyard when it bit Sligar's finger, which protruded through that fence.
¶ 33 Absent a showing that the Odells knew of the alleged dangerous propensities of their dog, Sligar fails to show any genuine issue of material fact regarding a breach of any duty they owed to her. Accordingly, she fails to show any common law negligence for the dog bite.
¶ 34 Sligar also relies on Brewer v. Furtwangler[34] to support her argument. Her reliance on that case is misplaced.
¶ 35 There, the defendants admitted that their dog was vicious and that they knew their dog was vicious prior to the attack at issue.[35] That is a critical distinction from the facts here. There is no similar admission by the Odells. Moreover, there is no evidence in the record to show that the Odells either knew or reasonably should have known of any alleged dangerous propensities of their dog. This complete failure of proof precludes a finding of any genuine issue of material fact regarding breach of any duty owed to Sligar and is fatal to her common law negligence claim.

Common Law Strict Liability
¶ 36 Sligar next claims that the trial court erred in dismissing her claim for common law strict liability. Because she did not plead any such claim and made no argument of such a claim on summary judgment, we need not address this issue.
¶ 37 In her complaint, Sligar pleaded statutory strict liability under RCW 16.08.040 and negligence. The materials in response to the *921 motion for summary judgment do not refer to any common law strict liability claim. The only argument regarding common law strict liability is contained in Sligar's motion for reconsideration. We need not further address this claim, which was not pleaded or argued on summary judgment.

MOTION FOR RECONSIDERATION
¶ 38 Sligar argues that the trial court abused its discretion in dismissing her motion for reconsideration. The trial court properly exercised its discretion in denying reconsideration of its summary judgment order.
¶ 39 Seeking reconsideration, Sligar submitted a new declaration, arguing that the trial court erred in its application of the law and that substantial justice had not been done. We disagree.
¶ 40 This court reviews a trial court's order on reconsideration for a manifest abuse of discretion.[36] A trial court abuses its discretion when its decision is manifestly unreasonable or based on untenable grounds.[37]
¶ 41 Under CR 59(a)(4), a trial court order may be vacated and reconsideration granted if the moving party introduces "[n]ewly discovered evidence, material for the party making the application, which he could not with reasonable diligence have discovered and produced at the trial." Under CR 59(a)(9), a motion for reconsideration may be granted if "substantial justice has not been done."
¶ 42 First, the declaration submitted in support of the motion is not "[n]ewly discovered evidence" under CR 59(a)(4). It could have been presented at the time the trial court was considering the original summary judgment motion. There is no showing that it could not have been presented then.
¶ 43 Second, as we have already explained in this opinion, the court properly applied the law to the facts of this case. Thus, CR 59(a)(8) is not a proper basis for this motion.
¶ 44 Finally, as the case law addressing CR 59(a)(9) makes clear, this is not a case for application of the substantial justice standard. Courts rarely grant reconsideration under CR 59(a)(9) for lack of substantial justice because of the other broad grounds afforded under CR 59(a).[38] In seeking reconsideration, Sligar merely repeated the arguments that she made in her motion for summary judgment. As set forth above, Sligar failed to demonstrate any error in the trial court's order on summary judgment. Under these circumstances, Sligar has failed to demonstrate that the trial court abused its discretion in denying reconsideration based on CR 59(a)(9).
¶ 45 Accordingly, we conclude the trial court properly denied the motion for reconsideration.
¶ 46 We affirm the summary judgment order and order denying reconsideration.
WE CONCUR: LAU and GROSSE, JJ.
NOTES
[1] RCW 16.08.040.
[2] RCW 16.08.050.
[3] Id.
[4] Clerk's Papers at 35.
[5] Young v. Key Pharm., Inc., 112 Wash.2d 216, 225 n. 1, 770 P.2d 182 (1989) (citing Celotex Corp. v. Catrett, 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)).
[6] Id. (citing Celotex, 477 U.S. at 322, 106 S.Ct. 2548).
[7] Celotex, 477 U.S. at 322-23, 106 S.Ct. 2548.
[8] Young, 112 Wash.2d at 225, 770 P.2d 182.
[9] Id. at 225-26, 770 P.2d 182.
[10] Id. at 226, 770 P.2d 182 (citing Del Guzzi Constr. Co. v. Global Northwest Ltd., 105 Wash.2d 878, 882, 719 P.2d 120 (1986)).
[11] (Emphasis added.)
[12] Lake v. Woodcreek Homeowners Ass'n, 168 Wash.2d 694, 704, 229 P.3d 791, 796 (2010) (quoting Arborwood Idaho, LLC v. City of Kennewick, 151 Wash.2d 359, 367, 89 P.3d 217 (2004)).
[13] Id. (citing State v. Engel, 166 Wash.2d 572, 578, 210 P.3d 1007 (2009)).
[14] Garrison v. Washington State Nursing Bd., 87 Wash.2d 195, 196, 550 P.2d 7 (1976).
[15] Lake, 168 Wash.2d at 704, 229 P.3d 791 (citing State v. Armendariz, 160 Wash.2d 106, 110, 156 P.3d 201 (2007)).
[16] Beeler v. Hickman, 50 Wash.App. 746, 751, 750 P.2d 1282 (1988) (citing McNeal v. Allen, 95 Wash.2d 265, 269, 621 P.2d 1285 (1980)).
[17] Id.
[18] Id. at 751-52, 750 P.2d 1282.
[19] Lake, 168 Wash.2d at 706, 229 P.3d 791 (quoting State v. Gonzalez, 168 Wash.2d 256, 263, 226 P.3d 131 (2010)).
[20] BLACK'S LAW DICTIONARY 346 (9th ed. 2009).
[21] See Singleton v. Jackson, 85 Wash.App. 835, 839, 935 P.2d 644 (1997) (holding that a property owner may consent to a licensee's entry through conduct, omission, or by means of local custom, as well as through oral or written consent).
[22] BLACK'S LAW DICTIONARY 1304 (9th ed. 2009) (emphasis added).
[23] Appellant's Brief at 12-15.
[24] Appellant's Brief at 13 (citing Singleton, 85 Wash.App. at 839, 935 P.2d 644).
[25] RCW 16.08.040.
[26] Int'l Ultimate, Inc. v. St. Paul Fire & Marine Ins. Co., 122 Wash.App. 736, 744, 87 P.3d 774 (2004) (citing Grimwood v. Univ. of Puget Sound, Inc., 110 Wash.2d 355, 359, 753 P.2d 517 (1988)).
[27] Beeler, 50 Wash.App. at 753, 750 P.2d 1282 (citing Arnold v. Laird, 94 Wash.2d 867, 871, 621 P.2d 138 (1980)).
[28] Id. at 753-54, 750 P.2d 1282 (citations omitted).
[29] Tincani v. Inland Empire Zoological Soc'y, 124 Wash.2d 121, 127-28, 875 P.2d 621 (1994).
[30] Blumenshein v. Voelker, 124 Wash.App. 129, 136, 100 P.3d 344 (2004).
[31] Arnold, 94 Wash.2d at 871, 621 P.2d 138.
[32] Beeler, 50 Wash.App. at 754, 750 P.2d 1282 (quoting Arnold, 94 Wash.2d at 871, 621 P.2d 138; RESTATEMENT (SECOND) OF TORTS § 518 (1977)).
[33] Arnold, 94 Wash.2d at 871-72, 621 P.2d 138.
[34] 171 Wash. 617, 18 P.2d 837 (1933).
[35] Id. at 617-18, 18 P.2d 837.
[36] Drake v. Smersh, 122 Wash.App. 147, 151, 89 P.3d 726 (2004).
[37] Weyerhaeuser Co. v. Commercial Union Ins. Co., 142 Wash.2d 654, 683, 15 P.3d 115 (2000).
[38] See Lian v. Stalick, 106 Wash.App. 811, 825, 25 P.3d 467 (2001).