MADSEN, J. (dissenting)
¶ 26 I disagree with the majority's holding that workplace harassment doctrines do not apply in places of public accommodation. I see no reason to treat instances of discrimination differently, nor do I believe the legislature intended to distinguish them-their intent is to eradicate discrimination wherever *46 it occurs. I write separately because the majority erroneously subjects employers to a strict liability standard for the discriminatory actions of nonsupervisory employees-a far higher standard than in the workplace setting-without justification and based on language that does not support such a result. Instead of imposing a duty on business owners to take action when they know, or should know, of discriminating conduct by an employee, the majority's strict vicarious liability standard makes business owners guarantors of their employees' behavior. This court rejected the duty to maintain a "pristine working environment"[1] in the context of workplace harassment in favor of a more balanced, workable approach, holding employers vicariously liable when they know, or should know, of the discriminatory behavior. We should adopt that same balanced approach with public accommodation discrimination.
Discussion
¶ 27 We have held that the Washington Law Against Discrimination (WLAD), ch. 49.60 RCW, provides protections against sexual harassment, as it is a form of sex discrimination.
*863 Glasgow v. Ga.-Pac. Corp., 103 Wash.2d 401, 405, 693 P.2d 708 (1985) ("Sexual harassment as a working condition unfairly handicaps an employee against whom it is directed in his or her work performance and as such is a barrier to sexual equality in the workplace.").
¶ 28 Indeed, the WLAD is clear that "[t]he right to be free from discrimination because of ... sex ... is recognized as and declared to be a civil right." RCW 49.60.030(1). It also establishes that
[i]t shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any distinction, restriction, or discrimination, or the requiring of any person to pay a larger sum than the uniform rates charged other persons, or the refusing or withholding from any person the admission, patronage, custom, presence, frequenting, dwelling, staying, or lodging in any place of public ... accommodation, ... except for conditions and limitations established by law and applicable to all persons, regardless of ... sex.
RCW 49.60.215(1). While we have decided cases that involve sexual harassment in the workplace and discrimination in places of public accommodation, we have not had occasion to determine what legal standard is appropriate for imposing liability on a proprietor of a place of public accommodation for alleged sexual harassment by a nonsupervisory employee.
¶ 29 In Glasgow, we held that a claim for sexual harassment in the workplace requires the employee to establish four elements:
(1) The harassment was unwelcome. ... (2) The harassment was because of sex. ... (3) The harassment affected the terms or conditions of employment. ... (4) The harassment is imputed to the employer.
103 Wash.2d at 406-07, 693 P.2d 708 (emphasis added) (formatting omitted). To determine whether the harassment can be imputed to the employer, we stated:
Where an owner, manager, partner or corporate officer personally participates in the harassment, this element is met by such *864 proof. To hold an employer responsible for the discriminatory work environment created by a plaintiffs supervisor(s) or co-worker(s), the employee must show that the employer (a) authorized, knew, or should have known of the harassment and (b) failed to take reasonably prompt and adequate corrective action. This may be shown by proving (a) that complaints were made to the employer through higher managerial or supervisory personnel or by proving such a pervasiveness of sexual harassment at the workplace as to create an inference of the employer's knowledge or constructive knowledge of it and (b) that the employer's remedial action was not of such nature as to have been reasonably calculated to end the harassment.
*47 Id. at 407, 693 P.2d 708. In other words, unless the employer knew of, should have known of, or participated in the alleged sexual harassment, it will not be liable for a nonsupervisory employee's actions. In my view, we should apply the Glasgow standard relied on by the trial court, which includes consideration of whether the harassment should be imputed to the employer.
¶ 30 According to the majority, the legal framework used by this court in Fell v. Spokane Transit Authority, 128 Wash.2d 618, 911 P.2d 1319 (1996), applies to this case. Under that framework, the plaintiff must establish four elements "[t]o make out a prima facie case under the WLAD for discrimination in the public accommodations context,"
(1) that the plaintiff is a member of a protected class, RCW 49.60.030(1) ;
(2) that the defendant is a place of public accommodation, RCW 49.60.215 ;
(3) that the defendant discriminated against the plaintiff, whether directly or indirectly, id .; and (4) that the discrimination occurred "because of" the plaintiff's status or, in other words, that the protected status was a substantial factor causing the discrimination, RCW 49.60.030.
State v. Arlene's Flowers, Inc., 187 Wash.2d 804, 821-22, 389 P.3d 543 (2017) (citing Fell, 128 Wash.2d at 637, 911 P.2d 1319 ("setting forth elements of prima facie case for disability discrimination under RCW 49.60.215") ). Applying this standard, the majority *865 holds that a business proprietor is directly liable, imposing a strict, vicarious liability standard for employees, regardless of the employer's knowledge of the harassing conduct or the opportunity to address the behavior or to discipline the perpetrator.
¶ 31 The majority rejects the Glasgow test here because it says that the legislature intended to impose direct liability on all employers for harassing conduct by any employee in any entity defined as a public accommodation. The majority says this result is mandated by the language of RCW 49.60.215(1), which says, "It shall be an unfair practice for any person or the person's agent or employee to commit an act which directly or indirectly results in any ... discrimination." But this language does not justify such draconian results.
¶ 32 First, the plain language of RCW 49.60.215(1) does not clearly impute an agent's acts to an employer, nor does a liberal reading of the statute reach this conclusion. Instead, the plain language of the statute merely states it is an unfair practice for a person to commit the discriminatory act-whether it is "the person" or the "agent" or "employee" of the person. RCW 49.60.215(1). Plainly, the persons who commit the act, or the agents, or the employees themselves will be directly liable for their own conduct. Thus, it seems clear the legislature chose to expand who could be held accountable for their own actions in the public accommodations context by including the language "any person or the person's agent or employee" in an attempt to further its purpose of eradicating discrimination. RCW 49.60.215(1), .010. But broadening who may be directly liable for their own conduct, or even the conduct of others as the majority asserts, tells us nothing about whether the legislature intended to impose strict liability on employers who had no reason to know of the discriminatory conduct.
¶ 33 Although the majority argues the use of "any person or the person's agent or employee" justifies the imposition of strict vicarious liability because it must "mean something *866 more than that each person is liable for their own actions," majority at 44, it fails to explain or justify departing from our principles of statutory interpretation for determining when a statute imposes strict liability. "Washington courts will not construe a statute to impose strict liability absent a clear indication that the Legislature intended to do so." Wright v. Engum, 124 Wash.2d 343, 349, 878 P.2d 1198 (1994) (citing Hyatt v. Sellen Constr. Co., 40 Wash. App. 893, 897, 700 P.2d 1164 (1985) ). In Wright, we rejected the plaintiff's argument to impose strict liability relating to our state's "White Cane Law," RCW 70.84.040. The plaintiff argued that the language stating a driver who fails to take "all necessary precautions to avoid injury" "shall be liable in damages for any injury caused such pedestrian" indicates the legislature intended to impose strict liability. *48 Wright, 124 Wash.2d at 348, 878 P.2d 1198.[2] The statute, he argued, is similar to the "dog biting" statute, which has been construed to create statutory strict liability.[3] See Beeler v. Hickman, 50 Wash. App. 746, 751-52, 750 P.2d 1282 (1988). The Beeler court *867 noted that the statute, RCW 16.08.040, addresses the knowledge requirement stating that an owner is liable "regardless" of the "owner's knowledge of such viciousness." REM. REV. STAT . § 3109-1 (Supp. 1941). "[B]y dispensing with the knowledge requirement, the statute was in derogation of common law." Wright, 124 Wash.2d at 349, 878 P.2d 1198.
¶ 34 We emphatically rejected creating strict liability in this instance because while the "Legislature intended to enhance protection for blind pedestrians, we disagree that this enhanced protection was intended regardless of whether a motorist was aware of the pedestrians' impairment." Id. at 351, 878 P.2d 1198. When the statute is read as a whole, it is clear the "Legislature has provided enhanced protection for blind pedestrians only where there is some conduct ... or indication ... by the pedestrian that he or she is sight or hearing impaired." Id. at 352, 878 P.2d 1198. Thus, we held that RCW 70.84.040 creates liability only where a driver had notice of the victim's impairment.
¶ 35 It must be clear that the legislature intended to impose strict vicarious liability before we construe the statute to give that effect. The legislature knows when it wishes to create strict liability and is clear when doing so. The "dog biting" statute is an example of this, where it does not matter whether the owner is aware of the dog's dangerous propensities and the statute explicitly states that. We construe statutes to "avoid 'absurd or strained consequences.' " Wright, 124 Wash.2d at 351, 878 P.2d 1198 (quoting In re Eaton, 110 Wash.2d 892, 901, 757 P.2d 961 (1988) ). In stark contrast, RCW 49.60.215 is silent as to when an employer may be held liable for the acts of an employee or agent.
¶ 36 If we adopt the majority's reading of the statute, it would be more reasonable to impose strict vicarious liability on employers under RCW 49.60.180(3) (workplace discrimination) than in the context of public accommodations because the statute clearly states employers will be liable for discrimination occurring in the terms or conditions of employment. That statute, like RCW 49.60.215, is silent as *868 to when an employer is vicariously liable for the acts of an employee. Thus, based on the majority's rationale, it necessarily follows that the employer under RCW 49.60.215 should be strictly liable for discrimination occurring in the "terms and conditions of employment." Yet, we did not interpret the workplace harassment statute so broadly. Instead, we applied a "knew or should have known" standard to determine when employers should be vicariously liable in the workplace context.
¶ 37 In Glasgow, we held that an employer should at least be aware of the misconduct in order to hold it vicariously liable for the acts of an employee. In creating the Glasgow test, we found the Minnesota Supreme Court's rationale persuasive:
*49 In our view, the [Minnesota Human Rights] Act does not impose a duty on the employer to maintain a pristine working environment. Rather, it imposes a duty on the employer to take prompt and appropriate action when it knows or should know of co-employees' conduct in the workplace amounting to sexual harassment.
Cont'l Can Co. v. State, 297 N.W.2d 241, 249 (Minn. 1980). Further, we found actions under Title VII of the Civil Rights Act of 1964 persuasive in implementing a knowledge element to vicarious liability under the workplace harassment statute. See Glasgow, 103 Wash.2d at 406 n.2, 693 P.2d 708.[4] Thus, we held that an employer is vicariously liable under the WLAD
*869 where the act is silent. However, based on the fact that an employer is in the best position to rectify the misconduct only when it is aware or should be aware of the misconduct, we believed a "knew or should have known" standard was appropriate to fairly hold employers accountable for the acts of their employees under RCW 49.60.180(3).
¶ 38 Again, we are faced with a statute that is silent as to when an employer should be held liable for the discriminatory acts of an employee or agent in RCW 49.60.215 (public accommodation). For the same reasons we articulated in Glasgow, where the statute is silent, vicarious liability should be imposed only where the business owner knew or should have known of the discrimination.
¶ 39 To impose strict vicarious liability in the public accommodations context but not in the workplace setting affords greater protection against discrimination for business customers than for employees who rely on continued employment and, therefore, have fewer options than a business customer. It makes no sense that a business proprietor enjoys more protection for instances of workplace discrimination where they are more likely to know of discrimination directed at other employees within the workplace than instances where a nonsupervisory employee discriminates against a fleeting patron. An employer should at least be in the best position to rectify the misconduct before we impose strict vicarious liability for the conduct of its employees.
¶ 40 Fell does not dictate a different result. In that case the alleged discriminatory action was the official act of those in control of the public accommodation, not a nonsupervisory employee as we have here. Fell, 128 Wash.2d 618, 911 P.2d 1319 (discriminatory act was the decision to eliminate service-made by board of directors). This case never considered imposing strict vicarious liability because the issue *870 was not presented. The majority's reliance on Fell on the issue of imputed liability is misplaced.
¶ 41 Perhaps more importantly, the majority's holding does little to eradicate discrimination in places of public accommodation. An employer can timely take action, even terminating the accused employee when it becomes aware of the allegations. Yet even such action will not allow the diligent employer to avoid strict liability. This is an unreasonable and illogical outcome that will have grave implications for how employers conduct themselves in the public accommodations context.
¶ 42 While the majority says that its goal is to eradicate discrimination in places of public accommodation, applying strict liability does not achieve that purpose. Unless the *50 employer knows or has reason to know of a low-level employee's conduct, the employer cannot address the conduct. Imposing strict liability will more likely result in management by lawsuit. I cannot imagine that was the legislature's intent when enacting RCW 49.60.215.
¶ 43 Because discrimination in places of public accommodation should be analyzed under the same standards as workplace harassment, I respectfully dissent.

Glasgow v. Ga.-Pac. Corp., 103 Wash.2d 401, 406, 693 P.2d 708 (1985) (quoting Cont'l Can Co. v. State, 297 N.W.2d 241, 249 (Minn. 1980) ).

The statute in its entirety reads:
The driver of a vehicle approaching a totally or partially blind pedestrian who is carrying a cane predominantly white in color (with or without a red tip), a totally or partially blind or hearing impaired pedestrian using a guide dog, or an otherwise physically disabled person using a service dog shall take all necessary precautions to avoid injury to such pedestrian. Any driver who fails to take such precaution shall be liable in damages for any injury caused such pedestrian. It shall be unlawful for the operator of any vehicle to drive into or upon any crosswalk while there is on such crosswalk, such pedestrian, crossing or attempting to cross the roadway, if such pedestrian indicates his intention to cross or of continuing on, with a timely warning by holding up or waving a white cane, using a guide dog, or using a service dog. The failure of any such pedestrian so to signal shall not deprive him of the right of way accorded him by other laws.
Former RCW 70.84.040 (1985).

The "dog biting" statute in relevant part reads:
The owner of any dog which shall bite any person while such person is in or on a public place or lawfully in or on a private place including the property of the owner of such dog, shall be liable for such damages as may be suffered by the person bitten, regardless of the former viciousness of such dog or the owner's knowledge of such viciousness.
Rem. Rev. Stat. § 3109-1 (Supp. 1941) (emphasis added).

See generally Barrett v. Omaha Nat'l Bank, 726 F.2d 424, 427 (8th Cir. 1984) ("Sexual harassment by a co-employee is not a violation of Title VII unless the employer knew or should have known of the harassment and failed to take immediate and appropriate corrective action."); Katz v. Dole, 709 F.2d 251, 255 (4th Cir. 1983) ("[T]he most difficult legal question ... concern[s] the responsibility of the employer for that harassment. ... [T]he plaintiff will have the additional responsibility of ... holding the employer liable under some theory of respondeat superior. We believe ... the plaintiff must demonstrate that the employer had actual or constructive knowledge of the existence of a sexually hostile working environment and took no prompt and adequate remedial action."); Henson v. City of Dundee, 682 F.2d 897, 905 (11th Cir. 1982) ("the plaintiff ... must show that the employer knew or should have known of the harassment in question and failed to take prompt remedial action"); Bundy v. Jackson, 205 U.S. App. D.C. 444, 641 F.2d 934, 943 n.8 (1981) ("The employer, in full knowledge of the alleged offense and having received a formal complaint, was in the best position to correct the offenses, yet impeded the complaint-and even abetted the offenses.").